Pro Se 1 (Rev. 09/16) Complaint for a Civil Case



# UNITED STATES DISTRICT COURT

for the

Eastern District of New York

BERNARD CHERRY

Case No. _____

*(to be filled in by the Clerk's Office)*

Plaintiff(s)
*(Write the full name of each plaintiff who is filing this complaint.
If the names of all the plaintiffs cannot fit in the space above,
please write "see attached" in the space and attach an additional
page with the full list of names.)*

-v-

NEW YORK CITY DEPARTMENT OF CORRECTION
TRIALS AND LITIGATION DIVISION, ATTORNEY
ERIC YUEN, ET, AL.

Defendant(s)
*(Write the full name of each defendant who is being sued. If the
names of all the defendants cannot fit in the space above, please
write "see attached" in the space and attach an additional page
with the full list of names.)*

Jury Trial: *(check one)* ☐ Yes ☑ No

CV 16    5708

COGAN, J

RECEIVED
OCT 13 2016
PRO SE OFFICE

ORIGINAL

## COMPLAINT FOR A CIVIL CASE

### I.    The Parties to This Complaint

#### A.    The Plaintiff(s)

Provide the information below for each plaintiff named in the complaint. Attach additional pages if
needed.

| | |
|---|---|
| Name | Bernard Cherry |
| Street Address | 765 East 163rd Street Apartment #14C |
| City and County | Bronx |
| State and Zip Code | New York, 10456 |
| Telephone Number | (646) 529-2146 |
| E-mail Address | risethree@gmail.com |

#### B.    The Defendant(s)

Provide the information below for each defendant named in the complaint, whether the defendant is an
individual, a government agency, an organization, or a corporation. For an individual defendant,
include the person's job or title *(if known)*. Attach additional pages if needed.

Pro Se 1 (Rev. 09/16) Complaint for a Civil Case

Defendant No. 1

Name — Eric K. Yuen

Job or Title *(if known)* — New York City Department of Correction Trials and Litigation Division

Street Address — 7520 Astoria Blvd Ste 305

City and County — East Elmhurst

State and Zip Code — New York, 11370

Telephone Number — (718) 546-0348

E-mail Address *(if known)*

Defendant No. 2

Name

Job or Title *(if known)* — NYC Department of Correction

Street Address — 75-20 Astoria Blvd

City and County — East Elmhurst

State and Zip Code — New York, 11370

Telephone Number

E-mail Address *(if known)*

Defendant No. 3

Name

Job or Title *(if known)*

Street Address

City and County

State and Zip Code

Telephone Number

E-mail Address *(if known)*

Defendant No. 4

Name

Job or Title *(if known)*

Street Address

City and County

State and Zip Code

Telephone Number

E-mail Address *(if known)*

## II.   Basis for Jurisdiction

Federal courts are courts of limited jurisdiction (limited power).  Generally, only two types of cases can be heard in federal court: cases involving a federal question and cases involving diversity of citizenship of the parties.  Under 28 U.S.C. § 1331, a case arising under the United States Constitution or federal laws or treaties is a federal question case.  Under 28 U.S.C. § 1332, a case in which a citizen of one State sues a citizen of another State or nation and the amount at stake is more than $75,000 is a diversity of citizenship case.  In a diversity of citizenship case, no defendant may be a citizen of the same State as any plaintiff.

What is the basis for federal court jurisdiction?  *(check all that apply)*

[✔] Federal question                    [ ] Diversity of citizenship

Fill out the paragraphs in this section that apply to this case.

### A.   If the Basis for Jurisdiction Is a Federal Question

List the specific federal statutes, federal treaties, and/or provisions of the United States Constitution that are at issue in this case.
Fed. R. Civ. P. 60(d)(1)(3)

### B.   If the Basis for Jurisdiction Is Diversity of Citizenship

1.   The Plaintiff(s)

   a.   If the plaintiff is an individual

   The plaintiff, *(name)* _____ , is a citizen of the State of *(name)* _____ .

   b.   If the plaintiff is a corporation

   The plaintiff, *(name)* _____ , is incorporated under the laws of the State of *(name)* _____ ,

   and has its principal place of business in the State of *(name)* _____ .

   *(If more than one plaintiff is named in the complaint, attach an additional page providing the same information for each additional plaintiff.)*

2.   The Defendant(s)

   a.   If the defendant is an individual

   The defendant, *(name)* _____ , is a citizen of the State of *(name)* _____ . Or is a citizen of *(foreign nation)* _____ .

     b.     If the defendant is a corporation

The defendant, *(name)* _____ , is incorporated under

the laws of the State of *(name)* _____ , and has its

principal place of business in the State of *(name)* _____ .

Or is incorporated under the laws of *(foreign nation)* _____ ,

and has its principal place of business in *(name)* _____ .

*(If more than one defendant is named in the complaint, attach an additional page providing the same information for each additional defendant.)*

3.     The Amount in Controversy

The amount in controversy-the amount the plaintiff claims the defendant owes or the amount at stake-is more than $75,000, not counting interest and costs of court, because *(explain)*:

## III.   Statement of Claim

Write a short and plain statement of the claim. Do not make legal arguments. State as briefly as possible the facts showing that each plaintiff is entitled to the damages or other relief sought. State how each defendant was involved and what each defendant did that caused the plaintiff harm or violated the plaintiff's rights, including the dates and places of that involvement or conduct. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.
See attached documents.

## IV.   Relief

State briefly and precisely what damages or other relief the plaintiff asks the court to order. Do not make legal arguments. Include any basis for claiming that the wrongs alleged are continuing at the present time. Include the amounts of any actual damages claimed for the acts alleged and the basis for these amounts. Include any punitive or exemplary damages claimed, the amounts, and the reasons you claim you are entitled to actual or punitive money damages.

See Attached documents

Pro Se 1 (Rev. 09/16) Complaint for a Civil Case

---

## V.     Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A.     For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case-related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing:        ~~10/10/2016~~  10/13/2016  BC

Signature of Plaintiff  _____

Printed Name of Plaintiff  Bernard Cherry

### B.     For Attorneys

Date of signing:        _____

Signature of Attorney   _____

Printed Name of Attorney _____

Bar Number              _____

Name of Law Firm        _____

Street Address          _____

State and Zip Code       _____

Telephone Number        _____

E-mail Address          _____

6

## Preliminary Statement

Attorney Eric K. Yuen, employed by the NYC Department of Correction; worked in the Trials &
Litigation Division, committed **"Fraud On The Court."** The evidence/exhibits submitted with
this complaint will prove knowledge an intent without a shadow of any doubt, that Eric Yuen
deliberately committed this action mentioned above along with the New York City Department
of Correction help. The evidence will also show that the NYC Department was trying to
terminate me in the year [2004]. It was Attorney Eric Yuen job to make sure that would happen
this go-around; by ignoring the false evidence and proceeded to prosecute me, as I believe it was
ordered by the NYC Departments of Correction . That is how I believe he clearly ignored the
erroneous and falsity of the evidence he used to prosecute me.

1. The New City Department of Correction hire their attorneys by posting a job notice for
   experience attorneys. In this job notice it details the qualification that an attorney must
   have and the duties they have to perform. Attorneys who work for the New York City
   Department of Correction (NYCDOC); have wide latitude for independent judgment
   under general supervision. Some of attorney Eric Yuen duties as detailed in this job
   notice are as follows: "Evaluating disciplinary matters for legal sufficiency; drafting
   formal Departmental charges against DOC uniform and non-uniform employees." He
   also must, "Prepare and reviewing of require documents and reciprocal discovery."
   Attorney Eric Yuen attended CUNY Law School and is registered in New York State.
   His year of registration is in the year [2000]. His company is listed with the NYC
   Department of Correction Trials and Litigation, (see exhibit [1]).

2. New York City Department of Correction Rules and Regulation book, which is given to all DOC employees once they are hired. This rule book is to ensure all employees follow these rules to the letter of the law or suffer disciplinary proceedings against themselves. Rule No. [8.05.030] states, **"Member of the Department, either Individually, collectively or through an organization, shall not issue any verbal or written statement embodying misleading, false, erroneous or defamatory information, either expressed or implied, concerning the department or any member thereof."** Attorney Eric Yuen violated this rule, when obtain false, misleading and erroneous evidence manufactured by the (NYCDOC) to have attorney Eric Yuen prosecute me and have me terminated from my employment, (see exhibit [2]).

3. Part of the discovery attorney Eric Yuen obtain for his prosecution of me, had a copy of my [22R]-Employees Performance Service Report. I was hired February 27th 1997 and terminated March 22nd 2007. The little over [10] years I work for the (NYCDOC), I had no disciplinary record; other than the [2] charges the (NYCDOC) and Eric Yuen fabricated and linked together to bring about my termination from the Department, (see exhibit [3]).

4. Before a member of service is brought up on formal charges, a Memorandum of Complaint (MOC), by Commanding Officer of the facility must be filled out and submitted through the proper channels within [2] business days. Operation Order [09/87] details the proper procedure that the commanding officer must take, (see exhibit[4]).

5. On August 12th 2004, Commanding Officer of Anna M. Kross Center (AMKC), Warden Valerie Oliver, filled out section (A-F) on this (MOC). In section © of this document

8

detail the charge or charges that will be imposed on me to have me terminated. The charge was medical incompetence; because I was out sick from **January 28th 2004 to August 11th 2004,** which added up to [44] days. Based on the [44] days I was out of work constitute firing of my employment as is stated in section (E) of this (MOC). That if I physically called out sick [40] times not place out sick by the New York City Department of Correction Health Management Division, (see exhibit [5]).

6.   Eric Yuen and the (NYCDOC) chose to use this very same (MOC) document to fire me with the new charge [BO 278/2006], affixed to this time barred document; due to the fact when it was signed by Warden Oliver for medical incompetence in the year [2004]. The same charge the Department charged me in [2004]. I summarize, since they could not fire me then; then a second go-around will be more successful. This document was not signed by my current Commander at the time by Brian Riordan. This document was signed to proceed with formal charges on July 10th 2006. Somebody else other than Chief Peter Caruso in section (G) signed for him. In Section (H), disciplinary record no. [278/06] was assigned on July 13th 2006.

7.   Section © of this (MOC) document has no days out sick for the year [2005] in the Complaint Information section. The Department generated these document as part of my discovery package. As (exhibit [1]) states that Eric Yuen must evaluate documents for legal sufficiency as well as drafting formal departmental charges against member of service. This one document is clear and convincing and shows intent, collaboration and filing of misleading and erroneous document between Eric Yuen and (NYCDOC). To

9

deceive the Court by acting in concert to bring about my termination. It is hard to believe that an officer of the Court (attorney) could not tell that these documents were false and misleading, (see exhibit [5].

8. On August 9th 2006, Eric Yuen had me sign charges [BO 278/2006]; without my attorney being present. He also signed his name and title beneath mine as a witness. This document proves that Eric Yuen knew exactly what he was doing; when he had me sign for these charge he drafted to prosecute me. His intention was to charge me and have me terminated for my employment, (see exhibit [6]).

9. Page [1] paragraph [1], states the charges and how many days I was out sick/injured. It states, **"On or about January 1st 2005 through December 31st 2005 that I failed to perform my duties."** I called out sick on [12] occasion for a total of [149] days. Eric Yuen drafted these charges he was fully aware that I did not violate the Department sick leave policy and his co-conspirators (NYCDOC) knew that as well, (see exhibit [6]).

10. On July 14th 2006 Commanding Officer Brian P. Riordan signed (MOC) document charge [BO 282/2006], to initiate the process of charging me formally. He was asking for [20] vacation days in section (E). Section (G) was signed by Chief Peter Caruso on August 1st 2006 to proceed with formal disciplinary charges. Chief Peter Curcio and Warden Brian P. Riordan did not sign (MOC) charge [BO 278/06], Chief Peter Curcio had his subordinate sign in his place as you can see in exhibit [7].

11. Directive [2258R-A] is the Absence Control/Uniformed sick Leave policy. Attorney Eric Yuen stated I violated this Directive in his opening minutes in the (OATH) trial

10

proceeding.  When you look and read page [4] of [7], Section (D).  You see that the Directive states the same wording that is in my Charges and Specification charge [BO 278/06], dated August 9th 2006.  I only called out [12] times and placed out by NYC Department of Correction Health Management Division Doctors, see exhibit [7]).  Eric Yuen Knew I did not violate this Directive; he was the one who drafted the charges against me.  If any charges should have been imposed on me; then It should have been  violating Section (D), not Section (E), for "Termination."  Eric Yuen miss-characterize this Directive intentionally to make it seem that I violated Section (E), instead of Section (D); so he can recommend termination for me as the Department wanted him to do to have me terminated, (see exhibit [8]).

12. Eric Yuen first charge he brought up in my (OATH) trial minutes, Index no. [07-0184], was charge [BO 278/06].  This charge had to be the first charge; because of my service record [22R] was so clean of disciplinary charges.  Medical Incompetence charge is the only one charge that can have me terminated.  The other charges were a smoke screen to hide the fact that he and the Department fabricated a lie; with a false misleading  charges against me, like the Medical Incompetence charge, [BO 278/06].

13. As I stated before, that (NYCDOC) wanted to terminate me in [2004].  By fabricated erroneous charges against me and had their attorney Eric Yuen enforced those charges to terminate me on this go-around, which what happened anyway.  To add more credence to my claim, we have my co-worker/partner, John Price shield no. [14462] (MOC) charge no. [B0 317/06].  We were both charged with the same violation, "Insubordination."  His Commanding

Officer was Brian P. Riordan of (AMKC). Chief Peter Curcio had no problem signing this (MOC) document and my (MOC) document to proceed with formal charge against officer Price and me. Officer Price and myself were charge with the same charge, for an incident that occurred on April 1st 2006; but I was the one charged first out of the two of us. The Department and Eric Yuen, wanted to make sure I was charge first; so the process can move along quickly as possible to have me terminated before I realized what they were doing, (see exhibits [7]).

13. On August 9th 2006, Eric Yuen had me sign this second charge [BO 282/06], the same time I signed charge [BO 278/06]. Once again he signed his name and title to the witness section of this document, (see exhibit [10]).

14. On page [204], line [1 to 11], he discusses Directive [2258R-A] and how much time the Directive allows you to miss work on sick related incidents. This tell me that Eric Yuen had knowledge of the penalties you can impose on a member of service. He chose circumvent the Directive true meaning to have me terminated at his and the Department discretion.

15. Page [205], lines [1 to 4], shows Chief Peter Curcio given testimony about the same charge he did not want to sign. (OATH) index no. [07-0184], list Eric Yuen as the attorney for the Department. It also list Directive [2258R-A] as evidence against me, (see exhibit [9]).

16. Eric Yuen did not enter the (UOF) Package Accountability Sheet document as evidence against me. He knew that this document would clear me of the insubordination charge on April 1st 2006 incident. When look at this document you see my name and officer John Price. You see our shield numbers and most important you see that we both submitted a

12

17. Use of Force Report (UOF), under where it states, "Type of Report." Eric Yuen knew that this charge was false and erroneous and perpetrated by (NYCDOC). He had to hold this document back so the Judge can find me guilty so he and the Department can have me terminated. This omission of this document; which does not have a date on it, to show when it was completed, was intentional held back by attorney Eric Yuen at the discretion of the Department, (see exhibit [11]).

18. Eric Yuen did not enter into evidence the Investigating Supervisor's Report. Captain Reginald Patterson shield no. [1306] was our area Captain at the time of the April 1st incident. When you look at his report on paragraph [4], "Conclusion and Findings." Captain Patterson stated in his conclusion, **"Based on the written and verbal report of staff."** The investigating Captain stated in his report That myself and Officer Price submitted a (UOF) report. That is why Eric Yuen intentionally kept this out so the Court can find me guilty of insubordination and Commissioner Martin Horn can terminate me, (see exhibit [12]).

19. The New York City Department of Correction is in the business of fabricating lies to terminate members of service. (OATH) index no. [07-1103], is Officer John Price (OATH) minutes. Assistant Deputy Warden Livingston Majors shield no. [1019], was our Tour Commander on April 1st 2006. His job is to collect all the reports from the April 1st 2006 incident and forward them through channels. The Tour commander must fill out a Tour Commander's report for all (UOF) incidents that occurs in his or her facility. On page [141], line [35], a question was asked to ADW. Majors from officer

13

John Price attorney.  His attorney asked ADW. Majors, **"Now is that your signature that appears next to for ADW Livingston?"**  On page [142], lines [2-10], ADW. Major stated, **No, that's not my signature, no."**  He also stated on line [9-10], **No, this as said before, this is not my document."**  Somebody in the (NYCDOC) switched ADW. Major original report with a fake report and a forged his signature.  Eric Yuen knew this as well because he did not enter this document into evidence like he did with Directive[2258RA], (see exhibit [13]).

Now we have forged documents that was not entered into evidence; but Directive [2258R-A] was entered into evidence, with a bogus, and time barred charge.  Eric Yuen and the Department knew this action were wrong, but they probably relied on the fact that I would never become self-aware of what truly went down and therefore get away with it. (see exhibit [8]).

20.  The forged Tour Commander's Report dated June 14th 2006, show the incident date April 1st 2006.  This report is definitely false.  Captain Anthony Williams shield no. 1019, paragraph should not appear in this report, (see exhibit [14]).

21.  Directive [5006], is Use of Force procedural rules, written orders that all members must adhered to.  Page [9 of 11], paragraph (V) procedure subparagraph (J), states **"Any charges should be initiated within thirty (30) days."**  It is clear based on this rule that the April 1st 2006 charge of insubordination is time-barred.  Attorney Eric Yuen did not introduce this Directive [5006], like he did Directive [2258R-A] into evidence against

14

22. me.  He was aware of the blatant forged document and proceeded to prosecute me on the insubordination charge anyway, (see exhibit [15]).

23. I was terminated on March 22nd 2007 by Commissioner Martin F. Horn.  The Department did not have the decency to hand me my termination papers in my hand.  Instead they shoved it under my door and ran off.  I was found guilty on Directive [2258R-A]; which was the first charge listed on the termination papers, under "Findings and Recommendation," (see exhibit [16]).

**WHEREFORE,** I Bernard Cherry, being the plaintiff in this complaint, request the Court to grant me the relief requested as follows:

(1)  Seeking the Court to "Vacate" (OATH) index no. [07-0184] decision so my name can be cleared of all bogus charge brought against me by Eric Yuen and the New York City Department of Correction.

(2)  Seeking the Court to award me all back pay in compensatory lost from the time I was terminated by the Department and to be reimbursed for all Court cost.

(3)  Seeking the Court to award me one hundred million dollars [$100,000,000] in punitive damages.

(4)  Seeking the Court to have the NYC Department of Correction promote me to the rank of Assistant Deputy Warden (ADW), because if Eric Yuen and the Department did not falsely charge and prosecute me; then I would have probably been promoted to that rank.

15

(5) Seeking the Court to have the NYC Department of Correction to give my retired

identification card and to grant me my good guy letter.  Also I would like the Court to have the

Department to purchase me a new firearm.  I had to turn mine in when I was terminated.

(6)  Seeking the Court to order such other and further relief that the Court deems just and

proper.

Dated: Bronx, New York

~~October 10th 2016~~  10/13/2016 BC

Respectfully submitted,

Bernard Cherry

765 East 163rd Street Apt. #14C

Bronx, New York 10456

(646) 529-2146

Risethree@gmail.com

**Exhibit [1] City of New York Department of Correction Job Posting Notice**

**City of New York**
**DEPARTMENT OF CORRECTION**
**Job Posting Notice**
**REPOST**

| | |
|---|---|
| **Civil Service Title:** Agency Attorney | **Level:**  I, II, III |
| **Title Code No:** 30087 | **Salary:** $71,784 - $82,552/$100,000<br>**Frequency:** ANNUAL |
| **Business Title:**   Agency Attorney | **Work Location:**  Rikers Island and/or 75-20 Astoria Blvd., East Elmhurst, NY 11370 |
| **Division/Work Unit:** Trials & Litigation | **Number of Positions:** 7 |
| **Job ID:** 251136 | **Hours/Shift:** Day |

### Job Description

The New York City Department of Corrections (DOC) is one of the largest municipal jail systems in the United States. It provides for the care, custody, and control of persons accused of crimes or convicted and sentenced to one-year or less of jail time. The "DOC" operates 12 inmate facilities, nine of which are located on Rikers Island. In addition, the department operates two hospital prison wards (Bellevue and Elmhurst hospitals) and court holding facilities in Criminal, Supreme, and Family Court in each borough. The DOC seeks to recruit experienced Attorneys to work in the Trials and Litigation Unit. Under general supervision and with wide latitude for independent judgment and action, the selected candidates will be responsible for, but not limited to the following:

- Evaluating disciplinary matters for legal sufficiency;
- Drafting formal Departmental charges against DOC uniform and non-uniform employees;
- Preparing and reviewing of required documents and reciprocal discovery;
- Conducting interviews with potential witnesses;
- Reviewing audio and video tape evidence and making comparative reviews;
- Representing the Department during informal settlement negotiations with opposing counsel;
- Conducting informal conferences concerning disciplinary cases at the Office of Administrative Trials and Hearings (O.A.T.H.);
- Recommending appropriate dispositions on disciplinary matters;
- Preparing memoranda detailing evidence and recommended negotiated plea agreements (settlements);
- Preparing disciplinary matters that are not settled for formal hearings at O.A.T.H;
- Conducting formal hearings on disciplinary charges at O.A.T.H. against employees of the Department;
- Researching legal issues for appellate argument as the Department's representative, before the New York City  Civil Service Commission;
- Handling "on call" for specified time periods for assistance, to determine whether reasonable suspicion exists  for authorization to conduct urinalysis testing of a member of the Department;
- Perform related duties as assigned.

Please note, depending on the needs of the Department and Unit, the selected candidate may be selected to handle only Use of Force related matters.

### Minimum Qualification Requirements

1.  Admission to the New York State Bar; and either "2" or "3" below.
2.  One year of satisfactory United States legal experience subsequent to admission to any state bar; or
3.  Six months of satisfactory service as an Agency Attorney Interne (30086).

Incumbents must remain Members of the New York State Bar in good standing for the duration of this employment.

**Note:**

In addition to meeting the minimum Qualification Requirements:
To be assigned to Assignment Level (AL) II, candidates must have one year of experience at Assignment Level I or two years of comparable legal experience subsequent to admission to the bar, in the areas of law related to the assignment. To be assigned to AL III candidates must have two years of experience in Assignment Levels I and/or II or three years of comparable legal experience subsequent to admission to the bar, in the areas of law related to the assignment.

### Preferred Skills

- Attorneys with seven (7) or more years of litigation experience is preferred;
- Excellent writing, communication, interpersonal, analytical, research, problem-solving, multi-tasking and organizational skills.

### Special Note

VARIOUS LEVELS (One through Three)
SALARY AND LEVEL TO BE DETERMINED BY EXPERIENCE/QUALIFICATIONS.

### Residency Requirement

New York City residency is generally required within 90 days of appointment. However, City Employees in certain titles who have worked for the City for 2 continuous years may also be eligible to reside in Nassau, Suffolk, Putnam, Westchester, Rockland, or Orange County. To determine if the residency requirement applies to you, please discuss with the agency representative at the time of interview.

### To Apply

For For City employees: Go to Employee Self-Service (ESS) - www.nyc.gov/ess and search for Job ID# **251136**
For all other applicants: Go to https://a127-jobs.nyc.gov and search for Job ID# **251136**
Submission of a resume is not a guarantee that you will receive an interview.
Only candidates under consideration will be contacted

| Posting Date: 8/4/16 | Post Until: 9/30/16 |
|---|---|

**The Department of Correction and the City of New York are Equal Opportunity Employers**

| | |
|---|---|
| Address | 7520 Astoria Blvd Ste 305, East Elmhurst (/new-york-lawyers/search-by/city value=East%20Elmhurst), NY (/new-york-lawyers/search-by/state?value=NY), United States (/new-york-lawyers/search-by/country?value=United%20States), 11370 |
| School | Cuny Law School |
| Registered Status | Currently registered |
| Registered in | NY |
| Year of registration | 2000 |
| Full Name | Eric Kok-Mun Yuen |
| Company | NYC Dept. Of Correction Trials And Litigation |
| Phone Number | (718) 546-0348 |

Submit review (/new-york-lawyers/eric-yuen/review)     Recommend (/new-york-lawyers/eric-yuen/recommend)

Print (/new-york-lawyers/eric-yuen/print?tmpl=component)

Map (http://maps.google.com/maps?q=7520+Astoria+Blvd+Ste+305+East+Elmhurst+NY+11370)

(https://pinterest.com/pin/create/link/?

Like Sign Up to see what your friends like.

## Need an Lawyer?

Send an email. All fields marked with an asterisk (*) are required.

Your Name *

Email *

Message *

Captcha *

Send

**Exhibit [2] NYC Department of Correction page [2] of Rules and Regulation**

# NEW YORK CITY DEPARTMENT OF CORRECTION

**8.05.010** Members of the Department are required to answer the telephone in a professional manner. When answering or called to a Department telephone, members of the Department shall promptly respond by giving the name of the command and their rank and surname.

**8.05.020** Members of the Department shall be courteous to persons seeking information and shall properly identify themselves if requested by the inquirer. If the information desired is not available or is restricted, the inquirer will be so advised.

**8.05.030** Members of the Department, either individually, collectively or through an organization, shall not issue any verbal or written statement embodying misleading, false, erroneous or defamatory information, either expressed or implied, concerning the Department or any member thereof.

**8.05.040** No communication, other than those involving routine matters, will be transmitted to outside agencies by Commanding Officers without prior approval or authorization of either the Commissioner, a member of the executive staff, or the Chief of Department.

**8.05.050** All members of the Department shall treat as confidential the official business of the Department. They shall not talk for publication, be interviewed or make public speeches on departmental business, nor shall they impart information relating to the official business of the Department to anyone, except:

   a. By due process of law.
   b. With the permission of the Commissioner.
   c. As authorized by these Rules and Regulations.
   d. The Commanding Officer upon obtaining permission from the office of the Deputy Commissioner of Public Information, may advise a properly identified representative of the press of current news.

Chapter Eight - page 2

A1

**Exhibit [3] Employees Performance Service Report [22R]**

**EMPLOYEE ... SERVICE REPORT**

INSTRUCTIONS: Place an X in the box indicating the reason for report. If any additional space is required for identification, use additional blank and complete proper section.

Form: NO. 22R
Rev.: 08/01/05
Ref.: O/O #02/05

Report Date: 07-13-06

| | |
|---|---|
| Probation Evaluation | Chief of Department |
| Promotion Evaluation | Inspector General's Request |
| Health Mgmt. Division | Other: M.O.C. [X] |

## EMPLOYEE PERSONAL PROFILE INFORMATION

| Last Name | First Name | M. L. | Rank / Title | Shield / I.D. No. |
|---|---|---|---|---|
| CHERRY | BERNARD | | C.O. | 15484 |

| | | | |
|---|---|---|---|
| Provisional ☐ | Modified-Duty ☐ | Present Assignment | Social Security No. |
| Probationary ☐ | MMR ☐ | ANNA M. KROSS CENTER | 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 |
| Permanent ☒ | NPA ☐ | Date of Appointment 02-27-97 | Sex — Male ☒ Female ☐ |

Home Address: 765 EAST 163RD STREET, # 14C BRONX, NEW YORK 10456
Telephone No.: (718) 589-2816

**FIREARM(S) INFORMATION**

| Make | Model | Serial No. |
|---|---|---|
| S&W | 6946 | VKP0817 |

**DEPARTMENTAL RECOGNITION**

| Type of Award | Date |
|---|---|
| UNIT CITATION | 04-01 |

Date of Last Qualification: 03-16-06

**DEPARTMENTAL ASSIGNMENTS**

| Command | From | To | Command | From | To |
|---|---|---|---|---|---|
| ACADEMY | 02-27-97 | 05-26-97 | | | |
| OBCC | 05-27-97 | 02-07-00 | | | |
| WEST FAC | 02-08-00 | 04-03-00 | | | |
| AMKC | 04-04-00 | PRESENT | | | |

**EDUCATIONAL HISTORY**

High School 4 Years
College _____ Credits
Major _____ Degree _____
Post Graduate _____ Credits
Major _____ Degree _____

**SUPPLEMENTAL EDUCATION, TRAINING, SPECIAL SKILLS**

Deadly Physical Force, Range Preparation, Chemical Agents (aerosol), Fire Safety, CPR/First Aid, Human Relations Sensitivity, Peace Officer Training. E.S.U.

## CORRECTIVE INTERVIEW

**LIST ALL CORRECTIVE INTERVIEWS WITHIN THE LAST TWELVE ( 12 ) MONTHS OF THIS REPORT**

| Date of Interview | Reason for Interview |
|---|---|
| NONE | |

## COMMAND DISCIPLINE

**LIST ALL COMMAND DISCIPLINES WITHIN THE LAST TWELVE ( 12 ) MONTHS OF THIS REPORT**

| Date | Violation | Date of Hearing | Disposition |
|---|---|---|---|
| 06-14-06 | CD # 207/06 3.20.070 (OBEY ORDER) | 07-06-06 | REFERRED MOC |

## MEMORANDA OF COMPLAINT

**LIST ALL MEMORANDA OF COMPLAINT SINCE APPOINTMENT TO DEPARTMENT**

| Date | Violations | Disposition |
|---|---|---|
| 09-09-04 | MOC # 0634/04 FAILURE TO OBEY ORDER | PENDING |

VERIFIED WITH TRIALS & LITIGATION ON 67/12/06 CO PELZER #10186

## RECOMMENDATIONS

☐ Do Not Recommend Promotion    ☐ Do Not Recommend Permanent Status
☐ Recommend Permanent Status    ☐ Recommend Promotion

REMARKS

Commanding Officer's Signature

Print Name: Brian P. Riordan, Warden /AMKC



| Employee's Name | | Rank/Title | | **EMPLOYEE PERFORMANCE SERVICE REPORT** | | | |
|---|---|---|---|---|---|---|---|
| CHERRY, BERNARD | | | | PART B | | | |

**CHRONIC ABSENCE INFORMATION**

| Chronic Absent | Yes [X] | Date Placed on Chronic Status  05-17-06 | Steady Post | Yes [X] | No [ ] | VISITS | |
| | No [ ] | Date Chronic Status Ended : 11-17-06 | Steady Tour | Yes [X] | No [ ] | 1300X2131 | |
| Note any Sanctions | | | Date of Assignment | | | | |

**A T T E N D A N C E   R E C O R D**

**SICK REPORT INFORMATION - List all absences due to illness within one ( 1 ) year of report.**

| From | To | Total no. of Work Days | Reason | Type | Compensation |
|---|---|---|---|---|---|
| 06-04-05 | 09-04-05 | 67 | CODE # 06-0 | | |
| 09-09-05 | 09-10-05 | 02 | CODE # 06-0 | | |
| 09-28-05 | 12-31-05 | 69 | CODE # 06-0 | | |
| 02-01-06 | 02-02-06 | 02 | CODE # 02 | | |
| 02-24-06 | 02-24-06 | 01 | CODE # 19 | | |
| 03-10-06 | 03-10-06 | 01 | CODE # 06-0 | | |
| 03-17-06 | 03-18-06 | 02 | CODE # 06-0 | | |
| 03-25-06 | 03-25-06 | 01 | CODE # 06-0 | | |
| 04-02-06 | 05-16-06 | 31 | CODE # 06-0 | | |
| 06-22-06 | 06-23-06 | 02 | CODE # 06-03 | | |
| | | | | | |

**SICK REPORT - Provide information for each calendar year since appointment to department.**

| CALENDAR YEAR | TOTAL NO. OF WORK DAYS | CALENDAR YEAR | TOTAL NO. OF WORK DAYS | CALENDAR YEAR | TOTAL NO. OF WORK DAYS |
|---|---|---|---|---|---|
| 1997 | 0 | | | | |
| 1998 | 23 | | | | |
| 1999 | 102 SC | | | | |
| 2000 | 14 (10 SC) | | | | |
| 2001 | 11 | | | | |
| 2002 | 49 | | | | |
| 2003 | 23 | | | | |
| 2004 | 77 (66 SC) | | | | |
| 2005 | 150 | | | | |
| 2006 | 39 YTD | | | | |

**ABSENT WITHOUT AUTHORIZATION - List all entire tour AWOLS for the past three ( 3 ) years.**

| Date From | Date To | Date From | Date To | Date From | Date To |
|---|---|---|---|---|---|
| NONE | | | | | |
| | | | | | |

**L A T E N E S S   R E C O R D**

**LATENESS RECORD - List all lateness for the past three ( 3 ) years from the report date.**

| Date | Total No. of Hours and Minutes | Date | Total No. of Hours and Minutes | Date | Total No. of Hours and Minutes |
|---|---|---|---|---|---|
| NONE | | | | | |
| | | | | | |

PREPARED/ UPDATED BY _____

**Exhibit [4] Operation Order [09/87] Memorandum of Complaint (MOC)**

420E



## THE CITY OF NEW YORK
## DEPARTMENT OF CORRECTION
# OPERATIONS ORDER



| [X] NEW | | [ ] REVISED | SUBJECT | |
|---|---|---|---|---|
| EFFECTIVE DATE | NUMBER | PAGE 1 OF 4 PAGES | MEMORANDUM OF COMPLAINT | E2 |
| 3 / 09 / 87 | 9/87 | | | |

AUTHORIZED BY THE CHIEF OF OPERATIONS

THOMAS W. MURRAY
Chief of Operations

SIGNATURE

1.    Effective March 9, 1987, the previous practice of initiating formal charges and specifications against members of the Uniformed Force by utilizing the present "Narrative" type Memorandum of Complaint shall cease.

2.    Effective March 9, 1987, all requests by Commanding Officers for formal disciplinary proceedings against members of the Uniformed Force shall be effected by utilizing the "Memorandum of Complaint" form.

3.    This newly instituted "Memorandum of Complaint" form consists of nine (9) sections ("A" thru "I").

4.    Commanding Officers submitting a "Memorandum of Complaint" are responsible for the typewritten completion of Sections "A" thru "F" as described below:

   SECTION "A"

   Enter a date indicating the day that the complaint was prepared.

   Enter the departmental abbreviation indicating the Facility or Division originating the complaint.

   Additionally, enter the assigned "Operations Complaint Number" which is obtained by telephonically requesting same from the Office of the Chief of Operations.   Commanding Officers are advised that once this complaint number is assigned by Operations, the completed Memorandum of Complaint is to be forwarded to and receipted by the Chief of Operations within two (2) business days.  It is recommended that Facilities/Divisions not request such complaint number until such time as the complaint is completed and ready for forwarding to the Chief of Operations.

A5

420H

| | EFFECTIVE DATE<br>3 / 09 /87 | SUBJECT<br>MEMORANDUM OF COMPLAINT | |
|---|---|---|---|
| | NUMBER<br>9/87 | PAGE 2 OF 4<br>PAGES |  |

**SECTION "B"**

Enter all information requested regarding the employee being
charged to include:

- Employee's full name
- Employee's rank and shield Number
- Employee's social security account number
- Employee's present assignment
- Employee's date of appointment
- Employee's date of promotion to present rank
- Indication of probationary status ("yes" or "no")
- Indication of modified assignment status ("yes or
  "no")
- Indication of chronic absence ("yes or"no")
- If "yes" to the above, indicate category ("A" or
  "B")

**SECTION "C"**

Indicate whether this formal complaint is being initiated
as a result of the charged employee's refusal to accept
Command Discipline findings regarding the same violation
("yes" or "no"). (If the complaint does result from a
refusal to accept Command Discipline - all related Command
Discipline forms must be attached to the complaint).

Indicate whether the charged employee was summarily
suspended from duty as a result of violation(s). ("yes" or
"no"). (If the employee was summarily suspended from duty,
enter the commence and revocation dates of such suspension.
Addtionally, copies of the specific suspension teletype
orders must be forwarded with the complaint).

Enter a concise description of the cited violations. If
necessary, this section may be continued on a separate piece
of blank, legal-sized bond paper specifying the Operations
Complaint Number and initialled by the Commanding Officer.

**SECTION "D"**

Specifically identify all Departmental Policy, Procedures,
Rules, Regulations and/or Institutional or Divisional Orders
relative to the complaint information.  The source document
shall be listed under the "Document" section (i.e.
"Directive No. 16/87), and the specific section applicable
to that document shall be entered under "Applicable
Section(s)" (i.e. Para. II.B.1, or 3.10.060, etc...).





| | EFFECTIVE DATE | SUBJECT |
|---|---|---|
| 420H | 3 / 09 / 87 | MEMORANDUM OF COMPLAINT |
| | NUMBER 9/87 | PAGE 3 OF 4 PAGES |

**SECTION "E"**

The Commanding Officer shall enter his/her specific recommendations regarding the disposition of the complaint in the event a finding of guilty is arrived at. (i.e. "termination of employee's services", "reduction in rank", "30 days suspension", "loss of 15 vacations days", "fine of $500", etc...).

**SECTION "F"**

The Commanding Officer submitting the complaint shall have his/her complete typewritten name entered and then affix his/her signature to same entering the date of signature.

5.  Prior to forwarding the completed Memorandum of Complaint to the the Chief of Operations, the Commanding Officer shall ensure that:

A.  A current "Employee Institutional Performance Record" (Form 22B) is attached to the complaint. This 22B shall be signed by the Commanding Officer in the "Remarks" section of that form with an accompanying date of signature, and that,

B.  Legible copies of all investigative reports, evidentiary documents, witness statements, etc., are attached to the complaint. All original documents and reports shall be maintained at the facility for production, upon request, at formal disciplinary proceedings.

6.  The completed Memorandum of Complaint and all attached documentation shall be inserted into a legal-sized, manila file folder with "prestong" type paper fasteners and the Operations Complaint Number clearly entered on the front of the folder.

7.  The completed complaint may now be forwarded to the Office of the Chief of Operartions.

8.  The Office of the Chief of Operations, upon receipt of the completed Memorandum of Complaint from a facility or division shall complete Section "G" of the complaint form and then:

A.  Forward it to the Office of the Department Advocate in those instances wherein the Chief of Operations has determined that the cited violation should be addressed via formal disciplinary proceedings, or,

420-H

| | EFFECTIVE DATE 3 / 09/87 | SUBJECT MEMORANDUM OF COMPLAINT |
|---|---|---|
| | NUMBER 9/87 | PAGE 4 OF 4 PAGES |

    B.    Return it to the Commanding Officer who has authorized the complaint in those instances wherein the Chief of Operations has determined that the complaint should be handled via other than the formal disciplinary process or that the complaint is otherwise administratively deficient.

9.    The Office of the Department Advocate, upon receipt of a forwarded Memorandum of Complaint from the Office of the Chief of Operations shall complete Section "H" of this form, assigning Disciplinary Record ("DR") number to the complaint. The Department Advocate shall then forward two (2) copies of the completed form to:

    (1) copy to the Office of the Chief of Operations
    (1) copy to the Commanding Officer authorizing the complaint.

10.    The Office of the Department Advocate shall complete section "I" of this form when a final disposition is obtained regarding the charged violations (i.e. OATH findings, Informal Conference Negotiated Plea, Case filed administratively, etc...). The final disposition shall be noted within section "I" and the original filed with the Advocate's Office and three (3) copies made and distributed as follows:

    (1) copy to the Office of the Chief of Operations
    (1) copy to the Commanding Officer authorizing the complaint
    (1) copy to the Director of Personnel for inclusion in the employee's departmental folder.

11.    This Operations Orders shall remain in effect until such time as the Department's Management Orders and Directive unit (M.O.D.U.) can publish the necessary revisional attendant forms to Directive No. 7502 (Disciplinary Process for Uniformed Personnel).

12.  **REFERENCE**    Directive Number 7502 (Disciplinary Process for Uniformed Personnel)

13.  **DISTRIBUTION**    Heads of Facilities and Divisions

O/O#9/87

**CITY OF NEW YORK**
**DEPARTMENT OF CORRECTION**          "MEMORANDUM OF COMPLAINT"

**SECTION "A"**

DATE: _____    FACILITY: _____
TO  :  CHIEF OF OPERATIONS    OPERATIONS COMPLAINT #:_____

**SECTION "B"**

EMPLOYEE INFORMATION:

LAST NAME:_____  FIRST NAME:_____
RANK    :_____  SHIELD NO.:_____
SOCIAL SECURITY NUMBER:_____
ASSIGNMENT:_____
DATE OF APPOINTMENT:_____
DATE OF PROMOTION TO PRESENT RANK:_____
PROBATIONARY      : [ ] YES   [ ] NO
MODIFIED ASSIGNMENT: [ ] YES   [ ] NO
CHRONIC ABSENT    : [ ] YES   [ ] NO
CATEGORY          : [ ] "A"   [ ] "B"

**SECTION "C"**

COMPLAINT INFORMATION:

A.  COMMAND DISCIPLINE REFUSAL?  [ ] YES (ATTACH COMMAND DISCII
                                 [ ] NO

B.  SUMMARY SUSPENSION?          [ ] YES (FROM_____ TO____
                                 [ ] NO

C.  SUMMARY OF FACTS AND CIRCUMSTANCES:

Reduced Copy

O/O 69/87

SECTION "D"

VIOLATION INFORMATION:

DOCUMENT                                    APPLICABLE SECTION(S)

---

SECTION "E"

COMMANDING OFFICER'S RECOMMENDATION:

---

SECTION "F"

AUTHORIZATION:

NAME/TITLE OF COMMANDING OFFICER:_____

SIGNATURE:_____   DATE:_____

---

SECTION "G"

OFFICE OF THE CHIEF OF OPERATIONS   DATE RECEIVED:_____

[ ] PROCEED WITH FORMAL DISCIPLINARY CHARGES
[ ] OTHER

SIGNATURE:_____   DATE:_____

---

SECTION "H"

OFFICE OF THE DEPARTMENT ADVOCATE   DATE RECEIVED:_____

DISCIPLINARY RECORD (D.R.) NUMBER ASSIGNED:_____
NAME OF STAFF MEMBER RECEIVING COMPLAINT:_____
SIGNATURE:_____   DATE:_____

---

SECTION "I"

FINAL DISPOSITION:

SIGNATURE:_____   DATE:_____

Redticed Copy

**Exhibit [5] Memorandum of Complaint dated August 12, 2004**



# CITY OF NEW YORK
## DEPARTMENT OF CORRECTION
### MEMORANDUM OF COMPLAINT

7502-AR

---

**SECTION "A"**

DATE : AUGUST 12, 2004

TO   : CHIEF OF DEPARTMENT

FACILITY :  ANNA M. KROSS CENTER

OPERATION COMPLAINT # 278/06

---

**SECTION "B"**

**EMPLOYEE INFORMATION:**

LAST NAME: CHERRY                          FIRST NAME: BERNARD
RANK: CORRECTION OFFICER                   SHIELD NO.15484
SOCIAL SECURITY NUMBER: 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
ASSIGNMENT: ANNA M. KROSS CENTER
DATE OF APPOINTMENT: 02-27-97
DATE OF PROMOTION TO RANK: N/A

MODIFIED ASSIGNMENT:     [  ]YES      [X] NO

PROBATIONARY            [  ]YES      [X] NO

CHRONIC ABSENT:         [X]YES       [  ] NO

---

**SECTION "C"**

**COMPLAINT INFORMATION:**

A.  COMMAND DISCIPLINE REFUSAL?          [  ] YES  (Attach Command Discipline)
                                          [ X] NO

B.  SUMMARY OF SUSPENSION?               [  ] YES
                                          [X] NO

C.  SUMMARY OF FACTS AND CIRCUMSTANCES:

NAME:  CHERRY, BERNARD     RANK: CORRECTION OFFICER      SHIELD: 15484

DATE REPORTED SICK  From: JANUARY 28, 2004    To: AUGUST 11, 2004  CODE # 06

TOTAL NUMBER OF WORK DAYS MISSED ON SICK LEAVE IN THIS PERIOD WERE: FORTY FOUR (44)

TOTAL NUMBER OF OCCASIONS REPORTED SICK THE DAY AFTER PASS DAYS: THREE (3)

HOLIDAYS REPORTED SICK: N/A

THE FACTS AND CIRCUMSTANCES OF <u>CORRECTION OFFICER BERNARD CHERRY'S</u> USE OF SICK LEAVE


DEMONSTRATES HIS/HER INCOMPETENCE TO PERFORM THE FUNCTIONS OF A <u>CORRECTION OFFICER.</u>
                                                           (RANK)

A2

SECTION "D"

VIOLATION INFORMATION:

DIRECTIVE 2258R-A

SECTION   "E"

COMMANDING OFFICER'S RECOMMENDATION:

THE RECOMMENDATION OF THIS COMMANDING OFFICER IS TERMINATION FROM SERVICE
WITH THE DEPARTMENT OF CORRECTION.

SECTION   "F"

AUTHORIZATION:

NAME/TITLE OF COMMANDING OFFICER:

SIGNATURE: _____   DATE: 6/13/04
          VALERIE OLIVER, WARDEN

SECTION "G"

OFFICE OF THE CHIEF OF DEPARTMENT:          DATE RECEIVED:   JUL 10 2006

[ ✓ ] PROCEED WITH FORMAL DISCIPLINARY CHARGES

[   ] OTHER

SIGNATURE: _____   DATE: 7/10/06

SECTION   "H"

OFFICE OF THE DEPARTMENT ADVOCATE:          DATE RECEIVED: 7/13/06

DISCIPLINARY RECORD (D.R.) NUMBER ASSIGNED: _278/06_

NAME OF STAFF MEMBER RECEIVING COMPLAINT: _____

SIGNATURE: Wanda Snowden   DATE: 7/13/06

SECTION   "I"

Final Disposition:

SIGNATURE: _____   DATE: _____

**Exhibit [6] Charges and Specification [BO 278/2006]**

ß

| CHARGES AND SPECIFICATIONS | DEPARTMENT OF CORRECTION CITY OF NEW YORK | DATE 08/08/2006 |
|---|---|---|

No. | B0278/2006

To  COMMISSIONER OF CORRECTION
(Through Official Channels)

I Hereby Charge C.O.  BERNARD CHERRY : # 15484  of AMKC

with

Violation of Rules and Regulations

## CHARGES  AND  SPECIFICATIONS

In that - XXX

1.      Said officer, from on or about January 1, 2005 through December 31, 2005, failed to efficiently perform his duties in that he has demonstrated a pattern of excessive absence and being unable to perform the full range of duties of his position as a correction officer by reporting sick on at approximately twelve (12) occasions, for a total of approximately one hundred forty-nine (149) days out of a possible two-hundred thirty (230) days of work, demonstrating an excessive use of sick leave, and an inability/medical incompetence to perform her duties as a correction officer.  Said officer also failed to provide adequate medical documentation for all absences as required.

    R & R # 3.05.010
    R & R # 3.05.120
    R & R # 3.20.030
    R & R # 3.20.300
    R & R # 4.30.020
    Dir # 2258 R-A
    Dir # 2262 R

2.      Said officer, from on or about January 1, 2006 through August 3, 2006, and continuing to the present, failed to efficiently perform his duties in that he has demonstrated a pattern of excessive absence and being unable to perform the full range of duties of his position as a correction officer by reporting sick on at approximately eight (8) occasions, for a total of approximately fifty-two (52) days, and by working on medically monitored status for approximately twenty-two (22) days out of a possible two-hundred thirty (230) days of work, demonstrating an excessive use of sick leave, and an inability/medical incompetence to perform her duties as a correction officer. Said officer also failed to provide adequate medical documentation for all absences as required.

    R & R # 3.05.010
    R & R # 3.05.120
    R & R # 3.20.030
    R & R # 3.20.300
    R & R # 4.30.020
    Dir # 2258 R-A
    Dir # 2262 R

Robert M. O'Leary

Robert M. O'Leary
Assistant Commissioner
Office of Trials & Litigations

**DEPARTMENT OF CORRECTION**
**CITY OF NEW YORK**

08/08/2006   ( # B0278/2006 )
(Date)

Facility Head

TO: ...........................................

...........................................

**CHARGES, SPECIFICATIONS**
**NOTICE OF PLEADING AND HEARING**

The charges and specifications set forth herein are submitted to you for service upon the member of the Department concerned.

_____
**Assistant Commissioner**

**NOTICE OF PLEADING AND HEARING**

TO: <u>C.O. BERNARD CHERRY : # 15484</u>

TAKE NOTICE that charges have been preferred against you to the Commissioner of Correction, City of New York, and that these charges, with specifications thereof, are as herein set forth. You are entitled to have legal counsel at all stages of this proceeding. Any attorney who represents you must file a notice of appearance with the Office of Administrative Trials and Hearings located at 40 Rector Street, New York, N.Y. 10006.

You have the right to file an answer to these charges within eight days of service to the undersigned, who has been designated as the Commissioner of the Trial Division by direction of the Commissioner of Correction at 60 Hudson Street, New York, N.Y. 10013.

The Office of Administrative Trials and Hearings (OATH) has rules of practice and procedure which are published in Title 48 of the Rules of the City of New York. Copies of OATH's rules are available at the address listed above.

Your legal rights regarding these charges may be covered under Section 75 of the New York State Civil Service Law.

_____
Robert W. O'leary by
**Assistant Commissioner, Trials Division**

Page 2 of 2

**ACKNOWLEDGMENT OF SERVICE**

I acknowledge personal service on me of the within charges, specifications, notice of pleading this

9 day of .....August..... 20 0.6

at .....12..... AM / P.M.

Signed: _____
_____
(Title)

Witness: _____
Eric Yucto Agency Attorney
(Title)

**Exhibit [7] Memorandum of Complaint Cherry & Price**



| | | |
|---|---|---|
| **CITY OF NEW YORK**<br>**DEPARTMENT OF CORRECTION** | **"MEMORANDUM OF COMPLAINT"**  | 7502-AR |

## SECTION "A"

DATE : JULY 13, 2006

TO : CHIEF OF DEPARTMENT

FACILITY : ANNA M. KROSS CENTER

OPERATION COMPLAINT # 282/06

## SECTION "B"

**EMPLOYEE INFORMATION:**

LAST NAME: CHERRY
RANK: CORRECTION OFFICER
SOCIAL SECURITY NUMBER: 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
ASSIGNMENT: ANNA M. KROSS CENTER
DATE OF APPOINTMENT: 02-27-97
DATE OF PROMOTION TO RANK: N/A

FIRST NAME: BERNARD
SHIELD NO.15484

MODIFIED ASSIGNMENT: [ ] YES      [ X ] NO

PROBATIONARY      [ ] YES      [ X ] NO

CHRONIC ABSENT:   [ X ] YES      [ ] NO

## SECTION "C"

**COMPLAINT INFORMATION:**
A. COMMAND DISCIPLINE REFUSAL?      [ ✓ ] YES  (Attach Command Discipline)
                                    [ ] NO

B. SUMMARY OF SUSPENSION      [ ] YES
                              [ X ] NO

**C. SUMMARY OF FACTS AND CIRCUMSTANCES:** *In accordance with Rules and Regulations #4.030.020 " The failure to submit a report when one is required" #3.05.120 "Members of the Department are responsible for the efficient performance of their duties". #3.20.070 "Members of the Department shall promptly obey all lawful orders of their supervisors". #3.20.190 "Members of the Department shall not willfully disobey a lawful order of a supervisor".* On June 14, 2006 the actions of Correction Officer Bernard Cherry, shield # 15484 fit the criteria for violation of aforementioned rules.

On June 14, 2006, Correction Officer Bernard Cherry, shield #15484 during his scheduled 1300X2131 tour of duty, was given written and verbal orders by Investigating Captain, Anthony Williams shield #865 to submit a report detailing his actions as they were verbally reported on April 1, 2006 to his area Supervisor, Captain Reginald Patterson shield #1306 regarding Use of Force 380/06. Officer Cherry was ordered to submit this report to the Investigation Office no later than 1500 hours on Wednesday, June 14, 2006. At approximately 1430 hours on June 14, 2006, Officer Cherry reported to the investigation office without a written report as ordered. Officer Cherry claimed that he was unable to write the ordered report due to his Medically Monitored Return Status and also stated that he was advised by Health Management not to do any writing. As of 1500 Hours on June 14, 2006 the actions of Officer Cherry violated the above-mentioned rules when he failed to submit a report when one is required. Officer Cherry actions demonstrated disrespect towards a supervisor, when he failed to promptly obey all lawful orders of a supervisor and willfully disobey a lawful command.

On July 6, 2006 a command discipline hearing was held in the office of the Deputy Warden of Administration. Officer Cherry was offered a penalty of a loss of four (4) vacation days. Officer Cherry refused offered penalty and requested a formal hearing.

Based on the decision of Officer Cherry, formal charges are hereby initiated for violation of above-mentioned Rules and Regulations.

*All*

SECTION "D"

VIOLATION INFORMATION:

DOCUMENT
RULES AND REGULATIONS

Applicable Section(s)

4.30.020, 3.05.120, 3.20.070 & 3.20.190

SECTION "E"

COMMANDING OFFICER'S RECOMMENDATION: IF MEMBER OF SERVICE IS FOUND GUILTY OF CHARGES SPECIFIED HEREIN, THE RECOMMENDATION OF THIS COMMANDING OFFICER IS A PENALTY OF A LOSS OF TWENTY (20) VACATION DAYS.

SECTION "F"
AUTHORIZATION:

NAME/TITLE OF COMMANDING OFFICER:

SIGNATURE:_____  DATE: 7/14/96
                BRIAN F. RIORDAN, WARDEN

SECTION "G"

OFFICE OF THE CHIEF OF DEPARTMENT:                    DATE RECEIVED:

[ √ ] PROCEED WITH FORMAL DISCIPLINARY CHARGES        JUL 31 2006
[   ] OTHER

SIGNATURE_____    DATE: 8/1/06

SECTION "H"                                                      8/2/06

OFFICE OF THE DEPARTMENT ADVOCATE:                   DATE RECEIVED:

DISCIPLINARY RECORD (D.R.) NUMBER ASSIGNED            282/06

NAME OF STAFF MEMBER RECEIVING COMPLAINT

SIGNATURE: Warda Yhowden          DATE   8/2/06

SECTION "I"

Final Disposition:

Signature:_____          Date_____

CITY OF NEW YORK
DEPARTMENT OF CORRECTION  | "MEMORANDUM OF COMPLAINT"

**SECTION "A"**

DATE : AUGUST 9, 2006                    FACILITY :  ANNA M. KROSS CENTER

TO     : CHIEF OF DEPARTMENT            OPERATION COMPLAINT # 317/06

**SECTION "B"**
**EMPLOYEE INFORMATION:**

LAST NAME: **PRICE**                        FIRST NAME: JOHN
RANK: **CORRECTION OFFICER**               SHIELD NO. 14462
SOCIAL SECURITY NUMBER: 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
ASSIGNMENT: ANNA M. KROSS CENTER
DATE OF APPOINTMENT: 01-04-96
DATE OF PROMOTION TO RANK: N/A
    MODIFIED ASSIGNMENT: [  ] YES       [ X ] NO

    PROBATIONARY            [  ] YES       [ X ] NO

    CHRONIC ABSENT:         [ X ] YES      [  ] NO

**SECTION "C"**

COMPLAINT INFORMATION:
A. COMMAND DISCIPLINE REFUSAL?       [  ] YES  (Attach Command Discipline)
                                      [ X ] NO

B. SUMMARY OF SUSPENSION              [  ] YES
                                      [ X ] NO

C. SUMMARY OF FACTS AND CIRCUMSTANCES: *In accordance with Rules and Regulations4.30.020 "The failure to submit a report when one is required". 3.05.120 " Members of the Department are responsible for the efficient performance of their duties". #3.20.070 "Members of the Department shall promptly obey all lawful orders of their supervisors". #3.20.190 "Members of the Department shall not willfully disobey a lawful command of a supervisor".* On June 14 the actions of Correction Officer John Price shield #14462 fit the criteria of violation of aforementioned rules.

On June 14, 2006, Correction Officer John Price shield #14462 during his scheduled 1300X2131 tour of duty, was given written and verbal orders by Investigating Captain, Anthony Williams shield #865 to submit a report detailing his actions as they were verbally reported on April 1, 2006 to his area Supervisor, Captain Reginald Patterson shield #1306 regarding Use of Force 380/06. Officer Price was ordered to submit this report to the Anna M. Kross Center's Investigation Office no later than 1500 hours on Wednesday, June 14, 2006. At approximately 1430 hours on June 14, 2006, Officer Price reported to the investigation office without a written report as ordered. Officer Price claimed that he was unable to write the ordered report due to his Medically Monitored Return Status and also stated that he was advised by Health Management not to do any writing. As of 1500 Hours on June 14, 2006 the actions of Officer Price violated the above-mentioned rules when he failed to submit a report when one is required. Officer Price's actions demonstrated disrespect towards a supervisor, when he failed to promptly obey all lawful orders of a supervisor and willfully disobeyed a lawful command.

On July 26, 2006 a command discipline hearing was held in the office of the Deputy Warden of Administration.  Officer Price was offered a penalty of a loss of three (3) vacation days.  Officer Price refused offered penalty and requested a formal hearing.

Based on the decision of Officer Price, formal charges are hereby initiated for violation of above-mentioned Rules and Regulations.

HARGES SPECIFIED HEREIN, THE RECOMMENDATION OF THIS COMMANDING OFFICER IS A PENALTY
F A LOSS OF TWENTY (20) VACATION DAYS.

ECTION   "F"
    AUTHORIZATION:
        NAME/TITLE OF COMMANDING OFFICER:
        SIGNATURE:_____          DATE:_____
            BRIAN P. RIORDAN, WARDEN

ECTION "G"
                                                          DATE RECEIVED:
    OFFICE OF THE CHIEF OF DEPARTMENT:                    AUG 17 2006
        [ ] PROCEED WITH FORMAL DISCIPLINARY CHARGES
        [ ] OTHER

        SIGNATURE_____          DATE 8/19/06

ECTION  "H"
                                                 9/22/06 DATE RECEIVED:
    OFFICE OF THE DEPARTMENT ADVOCATE:
    DISCIPLINARY RECORD (D.R.) NUMBER ASSIGNED        317/06
    NAME OF STAFF MEMBER RECEIVING COMPLAINT
        SIGNATURE: Vanya Allison           DATE  8/22/06

ECTION   "I"
    Final Disposition:

        Signature:_____      Date_____

**Exhibit [8] Directive [2258R-A] Absent Control/Uniform Sick Leave Policy**

415

| THE CITY OF NEW YORK<br>DEPARTMENT OF CORRECTION<br><br>**DIRECTIVE** | |  |
|---|---|---|

| [ ] NEW | [ ] INTERIM | [X] REVISED | SUBJECT | |
|---|---|---|---|---|
| **EFFECTIVE DATE**<br>02/14/00 | | **\*TERMINATION DATE**<br>/    / | **ABSENCE CONTROL/<br>UNIFORMED SICK LEAVE POLICY** | |
| **CLASSIFICATION**<br>#2258R-A | **SUPERSEDES**<br>Directive #2258R | **DATED**<br>04/12/93 | **DISTRIBUTION**<br>A | **PAGE 1**<br>OF 7 PAGES |
| RECOMMENDED FOR APPROVAL BY REVIEW BOARD MEMBER<br><br>*William J. Fraser*<br>WILLIAM J. FRASER, CHIEF OF DEPARTMENT         SIGNATURE | | | AUTHORIZED BY THE COMMISSIONER<br><br>*Bernard B. Kerik*<br>BERNARD B. KERIK                               SIGNATURE | |

## I.    PURPOSE

To establish an Absence Control Program to reduce chronic absenteeism among members of the uniformed force.

## II.    POLICY

To maximize the efficiency of the uniformed force by identifying and monitoring members who may require special attention and counseling concerning their use of sick leave.

**Note:**   For the purpose of this Directive, the following shall be excluded in the calculation of use of sick leave:

   A.  absences while confined to an admitting hospital;

   B.  the first absence (occurrence) resulting from a line of duty injury which was the result of an:

      1.  Unusual Incident, as defined in Directive 5000R, resulting in a serious injury;

      2.  Injuries sustained as a direct result of a Use of Force incident (any subsequent absences resulting from the UOF incident once a member has returned to duty will be considered in the calculation of sick leave);

   C.  absence related to pregnancy (subject to such limitations as the Department imposes . . . . a doctor's note from . . .

A6

Case 1:16-cv-05708-BMC-VMS   Document 1   Filed 10/13/16   Page 45 of 88 PageID #: 45

416



| EFFECTIVE DATE 02/14/00 | SUBJECT |  |
|---|---|---|
| CLASSIFICATION #2258R-A | ABSENCE CONTROL/ UNIFORMED SICK LEAVE POLICY | |
| DISTRIBUTION A | PAGE **2** OF 7 PAGES | |

## III.   PROCEDURE

### A.   CHRONIC ABSENCE

1. A member who reports sick on twelve (12) or more work days within a twelve (12) month period shall be classified as chronic absent and notified in writing of the classification (See Attachment A, Designation as Chronic Absent, form #2258-A).

2. A chronic absent classification shall remain in effect for six (6) months from the date the member returns to duty after being absent twelve (12) or more work days.

3. If the member is not absent during the six (6) month period the chronic absent classification shall be removed.

4. If the member is absent during the six (6) month period, the chronic absent classification shall be extended for six (6) months following the date the member returns to duty following the last absence.

5. A member classified as chronic absent may appeal that classification in accordance with the appeal procedures established in this Directive.

### B.   APPEAL PROCEDURE

1. A member classified as chronic absent may file a written appeal any time within twenty (20) days following the day the member receives written notification of the classification. The appeal shall be directed to the member's Commanding Officer and shall specify the reasons why the member believes the classification should be removed. The appeal may include any documentary evidence or exhibits the member believes will be helpful in resolving the appeal.

2. a. Upon receipt of the member's appeal, the Commanding Officer or a designee shall consider the facts and circumstances surrounding the member's absences as well as the reasons specified by the member. Factors to be considered include:

    i. The member's use of sick leave since joining the Department;

    ii. Whether the sick leave is the result of a verified line-of-duty injury, pregnancy or hospitalization;

    iii. Whether the use of sick leave precedes or follows pass days and holidays;

416



| EFFECTIVE DATE<br>**02/14/00** | SUBJECT<br>**ABSENCE CONTROL/**<br>**UNIFORMED SICK LEAVE POLICY** |  |
|---|---|---|
| CLASSIFICATION<br>**#2258R-A** | | |
| DISTRIBUTION<br>**A** | PAGE **3** OF<br>**7** PAGES | |

## III.   PROCEDURE   (cont.)

        iv. Whether the use of sick leave is associated with ordered overtime or lost pass days;

        v. The nature of the illness/injury (The Health Management Division (HMD) will verify nature of illness upon request).

    b. The Commanding Officer or designee shall state their reasons for recommending the approval or denial of the appeal in writing and forward all documents to the Bureau/Assistant Chief of the Division and/or the Deputy Commissioner of the unit.

  3. The Bureau/Assistant Chief of the Division and/or the Deputy Commissioner of the unit shall review the recommendation and note their determination, either affirming or reversing the Commands recommendation.  The review shall be forwarded to HMD for recommendation.

  4. The Commanding Officer of Health Management Division shall review appropriate records and render a final recommendation of the appeal.

  5. The appeal will then be forwarded to the Bureau Chief of Administration for final determination.

  6. Any member whose appeal is granted shall be immediately removed from the chronic absent classification.  If following the next sick report the member meets the criteria for placement in the chronic absent classification, placement shall be made in accordance with the aforementioned procedures.

C. DISCRETIONARY BENEFITS AND PRIVILEGES

Discretionary benefits and privileges include but are not limited to:

  1. Assignment to a steady tour;

  2. Assignment to a specified post or duties;

  3. Access to voluntary overtime;

  4. Promotions;

  5. Secondary employment;

416



| EFFECTIVE DATE 02/14/00 | SUBJECT | |
|---|---|---|
| CLASSIFICATION #2258R-A | **ABSENCE CONTROL/ UNIFORMED SICK LEAVE POLICY** | |
| DISTRIBUTION A | | PAGE 4 OF 7 PAGES |



### III.   PROCEDURE  (cont.)

      6.   Assignment to preferential/special units or commands;

      7.   Transfers.

**D.   DISCIPLINARY SANCTIONS**

In addition to the loss of discretionary benefits and privileges, a member who reports sick for twelve (12) or more work days during a twelve (12) month period may be subject to disciplinary sanctions.

**E.   TERMINATION**

    1.   A member who reports sick forty (40) or more work days within a twelve (12) month period may be subjected to termination.

    2.   A member who reports sick on fifteen (15) or more occasions within a twelve (12) month period may be subject to termination.

**F.   MITIGATION**

Before a disciplinary or termination action is commenced, the following mitigating factors shall be considered:

    1.   The member's use of sick leave since joining the Department;

    2.   Whether the sick leave is the result of a line of duty injury which was the result of an Unusual Incident (Directive 5000R) or a Use of Force Incident (Directives 5005R/5006);

    3.   Whether the use of sick leave precedes or follows pass days and holidays;

    4.   Whether the use of sick leave is associated with ordered overtime; and

    5.   The nature of the illness.

**G.   ADMINISTRATIVE PROCEDURES**

    1.   It is the responsibility of each Commanding Officer or designee to monitor the attendance records of the members assigned to that command and to counsel any member whose record is developing a pattern that will result in a chronic

416



| EFFECTIVE DATE | SUBJECT | |
|---|---|---|
| **02/14/00** | **ABSENCE CONTROL/** | |
| CLASSIFICATION | **UNIFORMED SICK LEAVE POLICY** | |
| **#2258R-A** | | |
| DISTRIBUTION | PAGE **5** OF | |
| **A** | **7** PAGES | |



### III.   PROCEDURE   (cont.)

absent classification (Refer to Attachment B, Attendance Counseling, form #2258-B). However, the lack of counseling will not negate the member from entering into a chronic absent classification.

2.   The Commanding Officer may deny or revoke one (1) or more discretionary benefits and privileges of a member who despite counseling developed a pattern that evidences an abuse of sick leave. The member shall have five (5) days in which to appeal such revocation. The Commanding Officer shall forward the appeal to the respective Bureau/Assistant Chief for final review and determination. The determination shall be returned to the member's Command within two (2) business days of receipt. The member shall be advised of the determination and a copy of the review shall be placed in the employee's personal history folder.

3.   A member placed into a chronic absence designation, may suffer the denial or revocation of one or more discretionary benefits and privileges at the discretion of the Commanding Officer anytime after the twenty (20) day appeal period has expired. If a member has filed a timely appeal, no denial or revocation of discretionary benefits shall take effect pending the determination of the appeal.

4.   The denial or revocation of one or more discretionary benefits and privileges shall not be automatic. Before such a determination is made consideration shall be given to the following factors:

   a.   The member's use of sick leave since joining the Department;

   b.   Whether the sick leave is the result of a verified line-of-duty injury, pregnancy or hospitalization;

   c.   Whether the use of sick leave precedes or follows pass days and holidays;

   d.   Whether the use of sick leave precedes or follows ordered overtime or lost pass days;

   e.   The nature of the illness; and

   f.   The employee's work performance.

416

| | EFFECTIVE DATE<br>02/14/00 | SUBJECT<br><br>ABSENCE CONTROL/<br>UNIFORMED SICK LEAVE POLICY |  |
|---|---|---|---|
| | CLASSIFICATION<br>#2258R-A | | |
| | DISTRIBUTION<br>A | PAGE 6 OF<br>7 PAGES | |

## III.   PROCEDURE  (cont.)

Members classified as chronic absent shall be given the highest priority for home visits by the Department's representatives.  The member shall again be eligible for discretionary benefits and privileges upon the member's removal from the chronic absent classification.

H.   DUTIES AND RESPONSIBILITIES OF THE HEALTH MANAGEMENT DIVISION

1.   The Health Management Division shall provide medical service for all members of the Department.

2.   The Health Management Division will also provide verification of nature of illness when a member submits an appeal using his/her illness as a basis.

Location:   Health Management Division
One Lefrak City Plaza – 15th Floor
59-17 Junction Boulevard
Rego Park, New York  11368
(718) 595-2524/2542

I.   EMPLOYEE RESPONSIBILITIES

No employee who has a chronic absent classification, shall be permitted to return to duty without authorization from the Health Management Division.

1.   Such members scheduled to work the 8-4 tour, who report sick shall report in person to the Health Management Division no later than 1100 hours on the day the member reports sick.

2.   Such members scheduled to work the 4-12 tour who reported sick shall report in person to the Health Management Division no later than 1700 hours on the day the member reports sick.

3.   Such members scheduled to work the 12-8 tour, who reported sick shall report to the Health Management Division in person by 0700 hours, on the first day of absence.

4.   In the event that such member is too ill to report to the Health Management Division on the first day of absence, said member shall notify the Health Management Division by telephone, at (718) 595-2524/2542.  Additionally, the member shall obtain a doctor's note from his/her personal physician or hospital, stating the following:

416



| EFFECTIVE DATE 02/14/00 | SUBJECT | |
|---|---|---|
| CLASSIFICATION #2258R-A | ABSENCE CONTROL/ UNIFORMED SICK LEAVE POLICY | |
| DISTRIBUTION A | PAGE 7 OF 7 PAGES | |



## III. PROCEDURE (cont.)

a. Diagnosis;

b. Treatment;

c. Prognosis (including anticipated date of return to duty).

The above information shall be written in non-medical terminology and shall be submitted to the Health Management Division, confirming that the condition was severe enough to prevent the member from reporting to the Health Management Division on the first day of absence.

## IV. REFERENCES

A. Directive #5000R, REPORTING UNUSUAL INCIDENTS, dated 04/13/92 (as amended).

B. Directive #5005R, USE OF FORCE (C.I.F.M. ONLY), dated 01/25/99.

C. Directive #5006, USE OF FORCE (ALL FACILITIES EXCLUDING C.I.F.M.), dated 01/25/99.

## V. ATTACHMENTS

A. Designation as Chronic Absent, Form #2258-A

B. Attendance Counseling, Form #2258-B

C. Medical Documentation Form (Form HM 1-87)

## VI. SUPERSEDES

Directive #2258R, ABSENCE CONTROL/UNIFORMED SICK LEAVE PROGRAM, dated 04/12/93.

**Exhibit [9] Office of Administrative Trials & Hearings Index No. 07-0184**

## 292

THE CITY OF NEW YORK
OFFICE OF ADMINISTRATIVE
TRIALS AND HEARINGS

P R E S E N T:   KEVIN CASEY
Administrative Law Judge

---

In the matter of:

    DEPARTMENT OF CORRECTION,

                    Petitioner,

        - against -              Index No.
                             07-0184

    BERNARD CHERRY,

                    Respondent.

---

January 12, 2007

Office of Administrative Trials and Hearings
40 Rector Street
New York, New York 10006

DIAZ DATA SERVICES
331 Schuylkill St., Harrisburg, PA 17110 - (717) 233-6664

A7

**293**

98

A P P E A R A N C E S:

ERIC YUEN, ESQ.
Attorney for the Petitioner
Department of Correction
60 Hudson Street
New York, NY  10013


BRIAN COLEMAN, ESQ.
Attorney for Respondent
Koehler & Isaacs, LP
61 Broadway,  25th Floor
New York, NY  10006

3

# I N D E X

| PETITIONER'S WITNESS | DIRECT | CROSS | REDIRECT | RECROSS | VOIR DIRE |
|---|---|---|---|---|---|
| Joseph McAteer | 10 | 15 | 18 | | |
| Reginald Patterson | 21 | 31 | 42 | | |
| Anthony Williams | 46 | 50 | 61 | 62 | |
| Cheryl Kelley | 70 | 79 | 89 | 94 | |

RESPONDENT'S

[None]

# E X H I B I T S

| PETITIONER | DESCRIPTION | I.D. | IN EV. |
|---|---|---|---|
| 1 | Medical summary Report | 9 | 9 |
| 2 | Time cards | 9 | 9 |
| 3 | Sick History | 9 | 9 |
| 4 | HMD Progress Notes | 9 | 9 |
| 5 | HMD Case Disposition | 9 | 9 |
| 6 | 4/6/06 Treating Phy. Sum. | 9 | 9 |
| 7 | 7/27/06 Treating Phy. Sum. | 9 | 9 |
| 8 | Use of Force Package | 9 | 9 |
| 9 | Sign-in Sheets | 9 | 9 |
| 10 | 11/29/04 Inv. Kelley Memo | 9 | 9 |
| 11 | 1/1/04 Inv. Kelley letter | 9 | 9 |
| 12 | 10/12/04 Gonzalez letter | 9 | 9 |
| 13 | 10/25/04 Gonzalez letter | 9 | 9 |
| 14 | 10/8/04 Cap. Wright letter | 9 | 9 |
| 15 | 10/24/04 Cherry letter | 9 | 9 |
| 16 | 2/14/00 Directive 2258RA | 9 | 9 |
| 17 | 6/22/00 Directive 2262R | 9 | 9 |

RESPONDENT

| A | Letter from Doctor | 84 |
|---|---|---|

# 294

99

I N D E X

| PETITIONER'S WITNESS | DIRECT | CROSS | REDIRECT | RECROSS | VOIR DIRE |
|---|---|---|---|---|---|
| Peter Curcio | 103 | 106 | | | |
| Rose Agro | 110 | 118 | 126 | 130 | |

RESPONDENT'S

| Bernard Cherry | 134 | 163 | 182 | 184 | 159 |

E X H I B I T S

| PETITIONER | DESCRIPTION | I.D. | IN EV. |
|---|---|---|---|
| 18 | HMD document, 5/1/06 | 166 | 167 |

RESPONDENT

| | DESCRIPTION | I.D. | IN EV. |
|---|---|---|---|
| B | Ms. Lopez Letter | 134 | 159 |
| C | 8/25/04 MD Note | 134 | 159 |
| D | 8/27/04 MD Note | 134 | 159 |
| E | 8/30/04 MD Note | 134 | 159 |
| F | 9/2/04 MD Note | 134 | 159 |
| G | 9/16/04 MD Note | 134 | 159 |
| H | 9/17/04 MD Note | 134 | 159 |
| I | 7/8/04 MD Note | 134 | 159 |
| J | 8/14/06 MD Note | 134 | 159 |

1    doing, they would not have a complete tour of duty
2    assignment.  And the department would have to find them
3    something to do, as Chief Curcio spoke about before.  The
4    documentation by doctors, and documentation by HMD, do not
5    excuse his absences.  The directive is very clear about
6    that.  Additionally, those documents are self-reporting,
7    meaning that and officer that feels pain in their hand
8    states, I feel pain in my hand, and that gets put on the HMD
9    note, or the doctor's note.  And the doctor does not have
10   any subjective -- does not have any objective means of
11   verifying that but for a MRI, or some kind of other medical
12   documentation that indicates there were broken bones.  But
13   as we heard from the officer, there were no broken bones.
14   There was just swelling, there was just tenderness.  There
15   were no broken bones, there were no MRI's that indicated
16   anything.  And medical incompetence directive has survived
17   legal challenge over and over again.  And it has been deemed
18   constitutional, clearly the courts recognize that the need
19   for the agency, the Department of Correction to be able to
20   operate with a full complement, with full duty officers.
21   This was testified to by Chief Curcio.  This by itself, is a
22   grounds for termination.  I don't actually need to talk
23   about the other two cases, because no excuse has been given,
24   as no dispute has been given as to the actual absence of the
25   officer in this case.  If you find for this case alone, you
26   can find justified termination.  But there's more, so we'll
27   discuss the other cases just for fun.  278 of '06, is the
28   medical incompetence case and that directive does give some
29   mitigation factors, so I'll go through them with you.  He's
30   not unfamiliar with the sick leave usage, or attendance
31   problems.  So that doesn't work in his favor to mitigate.
32   The absences, some of the absences are attributable to an
33   on-the-job injuries, but they are part of the routine
34   custody, and control of the inmates.  He keeps using the
35   expression use of force, but as we read -- as the testimony

PROCEEDINGS                                         204

1      MR. COLEMAN:  Thank you.
2      MR. YUEN:  When you subtract the days that are excluded
3   by the directive, meaning the first incidents that occurs
4   after an unusual incident in the facility, that leaves you
5   to the number that is stated in the charges, which in
6   totality is 80 days from September 9, 2005 to June 23, 2006.
7   This is a seven-month period, and 81 days -- 80 days exist
8   there.  I think the charges themselves cite 91 days in
9   total, but that period exceeds a 12-month period in the
10  directive.  That's double the amount that's in the directive
11  that's allowed 40 days.  These are not excused.  The case
12  law is clear that it does not matter whether these are
13  legitimate absences, documented absences.  It does not
14  matter whether their Worker's Compensation related cases.
15  It doesn't even matter whether it's legitimate injury.  What
16  matters is that the Department of Correction is entitled to
17  have an employee that is paid full-time to work full-time,
18  in the full capacity that he can.  The department should not
19  be paying an individual to sit at home sick, while other
20  people are forced to work overtime to cover for that
21  individual.  The department is not required to allow a
22  person to work indefinitely on MMR status.  And so that the
23  sole function involves no inmate contact.  Or so that their
24  sole function involves no writing, or anything like that.
25  It was asked Dep Agro did testify that it is an essential
26  function to check someone in visits.  Of course it is, just
27  as Mr. Coleman said, we don't want someone to sneak in
28  things contraband, anything into facility.  However, she
29  specifically said that if that's all that someone was able
30  to do, that person would not be fulfilling the job duties
31  and responsibilities, which is care, custody, and control of
32  inmates.  We do not have visitors in the prison 24 hours a
33  day.  We do not even have visitors necessarily throughout
34  one entire tour or shift, of a correction officer's work.
35  Therefore, they, if that's all that they're capable of

**Exhibit [10] Charges and Specification [BO 282/2006]**



| CHARGES AND SPECIFICATIONS | DEPARTMENT OF CORRECTION CITY OF NEW YORK | DATE 08/08/2006 |
|---|---|---|

No. | B0282/2006

To  COMMISSIONER OF CORRECTION
(Through Official Channels)

I Hereby Charge C.O.  BERNARD  CHERRY :  # 15484  of  AMKC

with                                 Violation of Rules and Regulations

## CHARGES  AND  SPECIFICATIONS

In that - XXX

1.       Said officer, on or about June 14, 2006, failed to efficiently perform his duties in that he failed to obey a lawful order from a supervisor to submit a written report regarding an incident that occurred on or about April 1, 2006 involving Inmate Murphy Boney (B&C #441-05-07623).

R & R # 3.05.010
R & R # 3.05.120
R & R # 3.20.030
R & R # 3.20.070
R & R # 3.20.190
R & R # 3.20.300
R & R # 4.30.020

Robert  M. O'Leary by [signature]

Robert M. O'Leary
Assistant Commissioner
Office of Trials & Litigations

A10

DEPARTMENT OF CORRECTION
CITY OF NEW YORK

08/08/2006   ( # B0282/2006 )
(Date)

TO: _____
      Facility Head

TO: _____
    _____
    _____

CHARGES, SPECIFICATIONS
NOTICE OF PLEADING AND HEARING

The charges and specifications set forth
herein are submitted to you for service upon the
member of the Department concerned.

_____
Assistant Commissioner

## NOTICE OF PLEADING AND HEARING

TO: C.O. BERNARD CHERRY ;  # 15484

TAKE NOTICE that charges have been preferred against you
to the Commissioner of Correction, City of New York, and that
these charges, with specifications thereof, are as herein set
forth. You are entitled to have legal council at all stages of this
proceeding. Any attorney who represents you must file a notice
of appearance with the Office of Administrative Trials and
Hearings located at 40 Rector Street, New York, N.Y. 10006.

You have the right to file an answer to these charges within
eight days of service to the undersigned, who has been
designated as the Commissioner of the Trial Division by
direction of the Commissioner of Correction at 60 Hudson
Street, New York, N.Y. 10013.

The Office of Administrative Trials and Hearings (OATH) has
rules of practice and procedure which are published in Title 48
of the Rules of the City of New York. Copies of OATH's rules
are available at the address listed above.

Your legal rights regarding these charges may be covered
under Section 75 of the New York State Civil Service Law.

Robert M. O'Leary by _____
Assistant Commissioner, Trials Division

Page 2 of 2

## ACKNOWLEDGMENT OF SERVICE

I acknowledge personal service on me of the
within charges, specifications, notice of pleading
this

9 ___ day of ___August___ 20 06

at ___12___   A.M.
              (P.M.)

Signed: _____

        Correctin Officer

                              _____
                              (Title)

Witness: Eric Yuen _____

         Department Advocate

                              _____
                              (Title)

**Exhibit [11] (UOF) Package Accountability Sheet**

Form # 5004-E
EFFECTIVE 06/30/04

# UOF PACKAGE ACCOUNTABILITY SHEET

To be completed by the Captain assigned to collect pertinent documentation for the facilities UOF incidents.

The following items are <u>mandatory</u> in all UOF incidents

| ITEM | | INCLUDED | |
|---|---|---|---|
| Warden Cover Sheet | Yes [ ] | No [ ] | |
| Tour Commander Report | Yes [ ] | No [ ] | |
| Inmate Infraction History | Yes [✓] | No [ ] | |
| Preliminary Report | Yes [✓] | No [ ] | |
| Copy of Investigated Infractions | Yes [✓] | No [ ] | |
| Copy of Served Infractions | Yes [✓] | No [ ] | |
| Inmate Witness Statements | Yes [ ] | No [✓] | |
| Labeled Polaroid of Subject Inmates | Yes [✓] | No [ ] | |
| Copy of Investigated injury Reports | Yes [✓] | No [ ] | |
| Copy of Accompany Cards | Yes [✓] | No [ ] | |
| Copy of Pedigree (Form #239) | Yes [✓] | No [ ] | |
| Place UOF# on Every single Page in Package In the Upper Right Hand Corner | Yes [ ] | No [ ] | |

The following <u>may</u> be applicable

| ITEM | | INCLUDED | | N/A |
|---|---|---|---|---|
| Random Search Reports | Yes [ ] | No [ ] | | [ ] |
| Mental Health Referrals | Yes [ ] | No [ ] | | [ ] |
| Photos of Injured Staff (Labeled) | Yes [ ] | No [✓] | | [ ] |
| Probe Team Reports | Yes [ ] | No [✓] | | [ ] |
| Copy of Log Books | Yes [✓] | No [ ] | | [ ] |
| Statement of Decontamination for Chemical Agent Use | Yes [ ] | No [ ] | | [ ] |
| Copy of Significant Event | Yes [ ] | No [ ] | | [ ] |
| Due Process | Yes [ ] | No [ ] | | [ ] |
| Miranda Warning | Yes [ ] | No [✓] | | [ ] |
| Compensation Papers | Yes [ ] | No [ ] | | [ ] |
| Separations Orders | Yes [ ] | No [ ] | | [ ] |
| Misc. | Yes [ ] | No [ ] | | [ ] |
| Misc. | Yes [ ] | No [ ] | | [ ] |
| Misc. | | | | |

List Each Staff Member Submitting a UOF, Witness, Verbal UOF, or Incident Report.

| Staff Full Name | Shield | Type of Report | Staff Full Name | Shield | Type of Report |
|---|---|---|---|---|---|
| ✓ 1. Bagby, Deanna | 9152 | UOFW | 11. | | |
| 2. Cherry, Bernard | 15484 | UO7 | 12. | | |
| 3. Price, John | 14462 | UO7 | 13. | | |
| 4. | | | 14. | | |
| 5. | | | 15. | | |
| 6. | | | 16. | | |
| 7. | | | 17. | | |
| 8. | | | 18. | | |
| 9. | | | 19. | | |
| 10. | | | 20. | | |

#1019

Tour Commanders Signature

**Exhibit [12] Investigating Supervisor's Report**

## INVESTIGATING SUPERVISOR'S REPORT — Part B

INSTRUCTIONS: To be completed by the supervisor investigating the incident. Use attachments if additional space is needed and indicate part and information section number on each additional page.     PRINT ALL INFORMATION

| Facility | Report Date | Incident Date | Facility Incident # | CCC Use of Force # | CCC Unusual # If Any |
|---|---|---|---|---|---|
| AMKC | 04/07/2006 | 04/01/2006 | | 0380/06 | |

**1** List the inmates you interviewed and summarize their statements:

| Name | B & C / Sent. Number | Housing Area | Summary |
|---|---|---|---|
| Boney, Murphy | 441-05-07623 | W18LA | It was just a misunderstanding with the |

Officer, everything is fine.

| Name | B & C / Sent. Number | Housing Area | Summary |
|---|---|---|---|
| | | | |

**2** Were there any other inmate witnesses who were not interviewed?   [  ] YES   [X] NO   If YES, explain:

**3** List staff and other witnesses / participants other than inmates who you interviewed and summarize their statements:

| Name | Rank | Shield Number | Summary |
|---|---|---|---|
| Bernard Cherry | C.O. | 15484 | CO Cherry stated that inmate Boney was |

Ordered to place his hands on the wall so he could pat frisk him. Inmate Boney did place his hands on the wall
But as I approached him to start pat frisking him he came off the wall and hit me in the face with his elbow.

| Name | Rank | Shield Number | Summary |
|---|---|---|---|
| John Price | C.O. | 14462 | CO Price stated that he went into the |

Search area with CO Cherry to observe the pat frisk.  As CO Cherry approached said inmate without warning
He came off the wall and hit CO Cherry.

| Name | Rank | Shield Number | Summary |
|---|---|---|---|
| Deanna Bagby | C.O. | 9152 | CO Bagby stated that she observed CO |

Cherry and Price walk inmate Boney to the search area and he placed his hands on the wall.  She then returned
Her attention to the main visit floor.  When she looked back at the search area inmate Boney was on the floor
With his hands cuffed behind his back.

**4** FINDINGS OF INVESTIGATION: State your conclusion as to the facts of the incident. State your conclusion as to the force used, including your review of medical data. State any alternatives which were used prior to the use of force. State your conclusion as to alternatives which should Have been used, if any. State your findings as to the reason force was used. State and resolve, if possible, factual disputes between different versions of the incident given by different witnesses or participants:

Submitted herein is an investigation conducted by this writer Captain Reginald Patterson # 1306 surrounding a
UOF/AOS.  This writer was instructed by the on duty tour commander ADW Major # 1019 to conduct an
Investigation into UOF # 0380/06.

My investigation reveals the following: On April 01, 2006 at approximately 1040 hrs inmate Boney, Murphy
B&C # 441-05-07623 Nysid # 5616733N, a blk male detainee, 35 years old, DOB 11/22/1969, 6'03", 220 lbs,
brown eyes, blk hair.  Inmate Boney is a non-SRG, non-Red ID, non-ICR, Non-VOP, housed in W18LA bed # 7.
He is currently charged with two counts of 160.10 – Robbery and has a bail status of $50,000 and $100,000. Said
Inmate was admitted to DOC custody on 06/30/2005 and was reported to have assaulted visit officers Bernard
Cherry # 15484 and John Price # 14462.  Inmate Boney assaulted CO Cherry by hitting him to the right side of
The face with his right elbow.  Then as CO Price and CO Cherry tried to gain control of inmate Boney with
Control holds both officers and the inmate fell to the floor in the visit search area.

**Staff Reports:**

CO Cherry who was assigned as the Visit Patrol Officer during the 0800x1631 tour, gave a verbal report which
Stated the following in substance: On April 01, 2006 at approximately 1040 hrs I CO Cherry instructed inmate

Continue on Reverse Side

A19

| 4 | (Continued) Boney to place h... ...ands on the w... ...so he could be pat frisks ... ...nmate Boney complied but as I CO |
|---|---|

Cherry approached him he came off the wall and hit me with his right elbow to the right side of my face. CO
Price ordered said inmate to stop resisting and to place his hands back on the wall, but inmate Boney advanced
Towards CO Price. I then regained my balance and tried to place inmate Boney in a rear arm lock control hold.
As I attempted this myself, CO Price, and inmate Boney fell to the floor. At this time I was able to utilize a rear
Arm lock to control inmate Boney and I placed handcuffs on him thus terminating his assault on staff.
CO Price who was assigned as the Visit Patrol Officer during the 0900x1731 tour, gave a verbal report which
Stated the following in substance: On April 01, 2006 at approximately 1040 hrs I CO Price went into the search
Area with CO Cherry and inmate Boney to observe the pat frisk. As CO Cherry approached said inmate he
Came off the wall and struck CO Cherry in the face. I attempted to place inmate Boney in a control hold, but we
All fell to the floor and CO Cherry placed handcuffs on the inmate this terminating this incident.
CO Bagby who was assigned as the Visit Control Booth Officer during the 0800x1631 tour, submitted a written
Report which stated the following in substance: On April 01, 2006 at approximately 1040 hrs I observed CO
Price and Cherry escort an inmate that I was later informed was Boney, Murphy to the search area. As inmate
Boney entered the search area he put his hands on the wall. At this time I returned my attention to the main visit
Floor. When I looked back in the search area I noticed inmate Boney on the floor with his hands cuffed behind
Him. I did not witness inmate Boney assault CO Price or Cherry.

**Inmate Statements:**
I Captain Patterson interviewed inmate Boney, Murphy who provided an inmate voluntary statement which
Stated the following in substance: It was just a misunderstanding the officer felt I called him a nigger and I
Didn't. No other inmates were in the search area at the time of this incident.

**Medical:**
Inmate Boney was seen in the main clinic on April 01, 2006 at approximately 1445 hrs. PA Ebu Chylkm noted
Patient stated it was a misunderstanding. Patient was examined in the clinic, see progress notes for full report.
Treatment see progress notes. PA Chylkm stated to this writer that the patient has no visible injuries and is
Claiming no injuries. The disposition is to return the inmate to his housing area.

**Conclusion and Findings:**
Based on the written and verbal reports of staff, the medical documentation, and the inmate voluntary statement
I Captain Patterson conclude the following: The staff accounts of the force used are consistent with the medical
Documentation. CO Cherry did not deploy chemical agents because inmate Boney came off the wall
Unexpectedly, and hit him in the face. CO Price did not deploy chemical agents because he was less then two
Feet away from the subject. Inmate Boney was infracted for assault on staff, and processed for PHD housing.
Continued on 600ar

| 5 | Do you find that the force was necessary?  [ x ] YES   [  ] NO   If YES, Force was   [ x ] Appropriate   [  ] Excessive |
|---|---|

Explain your finding: The force used was necessary to protect staff and stop the assault.

| 6 | Do you find that the force was avoidable?   [  ] YES   [ X ] NO   Explain your reason: to prevent injury to staff |
|---|---|

| 7 | If Applicable, Recommendations:                              Explain |
|---|---|

(Check one or more)
☐ Commendation        **CO Price failed to submit a UOF report upon his return to duty.**
☐ Discipline (i.e. M.O.C.)

| 8 | Based on this incident, do you recommend any changes in Departmental policy and / or procedures?   [  ] YES   [ x ] NO   If YES explain: |
|---|---|

| 9 | Are inmate injury reports attached?   [ x ] YES   [  ] NO   If NO, state the reason: |
|---|---|
| 10 | If staff / visitor claim injury, are medical reports attached?   [ x ] YES   [  ] NO |

Submitted by   (Print LAST NAME, FIRST NAME, RANK and SHIELD #):      Signature:

Patterson, Reginald Captain # 1306          R. Patt...

**Exhibit [13] Office of Administrative Trials & Hearings Index No. 07-1103**

THE CITY OF NEW YORK
OFFICE OF ADMINISTRATIVE
TRIALS AND HEARINGS

P R E S E N T:        ALESSANDRA ZORGNIOTTI
                      Administrative Law Judge

---

In the matter of:

    DEPARTMENT OF CORRECTION,

                    Petitioner,

       - against -                    Index No.
                                                07-1103

    JOHN PRICE,

                Respondent.

---

March 13, 2007

Office of Administrative Trials and Hearings
40 Rector Street
New York, New York 10006

2

A P P E A R A N C E S:


DAVID K. KLOPMAN, ESQ.
Attorney for the Petitioner
Department of Correction
60 Hudson Street,  7th Floor
New York, NY  10013


LUIS SERRANO, ESQ.
Attorney for Respondent
Koehler & Isaacs, LLP
61 Broadway,  25th Floor
New York, NY  10006



# I N D E X

**PETITIONER'S**
**WITNESS**

| | DIRECT | CROSS | REDIRECT | RECROSS | VOIR DIRE |
|---|---|---|---|---|---|
| Reginald Patterson | 11 | 30 | 55 | | |
| Anthony Williams | 60 | 69 | | | 16,22 |
| Rose Agro | 100 | 102 | | | ,25 63,66 |

**RESPONDENT'S**

| | | | | | |
|---|---|---|---|---|---|
| Bernard Cherry | 116 | 126 | | | |
| Livingston Ma or | 131 | 150 | 129 | | |

# E X H I B I T S

**PETITIONER**

| | DESCRIPTION | I.D. | IN EV. |
|---|---|---|---|
| 1 | Capt. Patterson's Notes | | |
| 2 | Use of Force Report | 15 | 18 |
| 3 | Capt. Patterson Memo | 20 | 22 |
| 4 | Capt. Williams Memo, 6/13/07 | 23 | 26 |
| 5 | Capt. Williams Memo, 6/14/07 | 63 | 63 |
| 6 | HMD Case Disposition, 5/19/07 | 65 | 67 |
| | | 67 | |

**RESPONDENT**

| | | I.D. | |
|---|---|---|---|
| A | Use of Force Directive | | |
| B | Transcript from 1/4/07 | 35 | 35 |
| C | Charges & Specifications | | 45 |
| D | Warden Rerdan Memo, 6/15/07 | | 81 |
| E | Tour Commander's Report | | 103 |
| F | Preliminary Statement | | 135 |
| | | | 145 |

**ADMINISTRATIVE LAW JUDGE**

| | | |
|---|---|---|
| 1 | Notice of Charges | |

8

1    A.    Okay.

2    Q.    Do you, in your opinion having two captains

3 investigate, is it unusual for two captains to investigate,

4 or collaborate in some level in one single investigation?

5 Is that uncommon from your experience?

6    A.    No, it's not uncommon, no.

7    Q.    Thank you.  Now in your report, which is the

8 second paragraph of Respondent's E, you -- well let me just

9 put it this way.  Did you ever have a conversation with

10 Captain Patterson about what transpired with respect to the

11 reports?

12    A.    Yes, I did.

13    Q.    And based on that conversation, is that where you

14 derived the contents of this section right here?

15    A.    Yes, that and the information he presented in his

16 investigation.

17    Q.    Now but you don't, you don't have any dates in

18 paragraph two, is there a reason?

19    A.    No, there was no reason.

20    Q.    Now outside of this document, with respect to

21 paragraph one, two, and four, did you create any other

22 reports related to this investigation, or is this...

23    A.    Did I create any?

24    Q.    Did you write any other reports, related to this

25 investigation?

26    A.    No, this would be my report.

27    Q.    Okay, so just those three paragraphs, constitute

28 your report?

29    A.    Yes, my report is more of a summary.  What I do is

30 I look at the investigation make sure that everything is in

31 the investigation, that things that are pertinent to the

32 investigation weren't left out.  All of the information is

33 in and everything else.  Whether everything is right.  I

34 don't do an investigation.

35    Q.    Now is that your signature that appears next to

MAJOR – DIRECT                                        142

1    for ADW Livingston?

2         A.   No, that's not my signature, no.

3         Q.   That's not your signature.  Do you know whose

4    signature that is?

5         A.   No, I don't.

6         Q.   So somebody signed this, somebody signed this

7    document for you, and you didn't have an opportunity to

8    review it?

9         A.   No, this as I said before, this is not my

10   document.  This, I would've handed in a document similar to

11   this.  However, these are part of my documents.  Now once I

12   present my investigation to my supervisor, which who is,

13   would be the Security Deputy Warden.  Okay, he would make a

14   decision on where to go with it from there.

15        Q.   You mean, is there another report out there that

16   says Tour Commander's Report somewhere?

17        A.   Well I would've handed in an original stating my

18   findings.

19        Q.   Did you include your report as part of the use of

20   force package?

21        A.   Yes.

22        Q.   And do you still have copies of that report in

23   your office?

24        A.   I don't recall -- no, I don't think so, because I

25   don't cite these.  This, like I said, this would go to the

26   Security Dep.  The original would go to the Security Dep

27   with the package.

28        Q.   So you actually typed in paragraphs one, two and

29   three -- I mean, I'm sorry, one, two and four.  But somebody

30   else signed this for you, and that person didn't type in, is

31   that common practice?

32        MR. KLOPMAN:  Judge, objection.

33        ALJ ZORGNIOTTI:  Overruled.

34        MR. MAJOR:  Okay.  This report, is not my report.

35   However, I did type up findings like this, and presented it

**Exhibit [14] Tour Commander's Report**

DEPARTM... OF CORRECTION

## TOUR COMMANDER'S REPORT | PART C

| Facility | Date of this Report | Incident Date | Facility Incident # | CCC Use of Force # | CCC Unusual |
|---|---|---|---|---|---|
| AMKC | 6/14/06 | 4/1/06 | | 310/06 | |

INSTRUCTIONS: This review shall be based on a full review of all underlying documentation in addition to the investigation's report.
PRINT ALL INFORMATION

**1** Was force necessary? ☐ YES ☐ NO  If YES, force was ☐ APPROPRIATE ☐ EXCESSIVE    N/A

**2** Conclusion based on review:

On April 1, 2006 a "Use of Force" occurred in the visit area involving Inmate Boney, Murphy #4410507623/5616733N of West Lower & Correction Officers Cherry, Bernard #15484 & Price, John #14462. As per Captain Patterson's investigation Inmate B was removed from the visit floor by these officers and escorted to the visit search area. At which time a use of force occurred. Officers Cherry & Price as a resulted sorted medical attention and was then out on compensation leave. A verbal report was obta from the two officers which they stated the following: Inmate Boney's time was up (conclusion of one hour visit) and he refused leave the visit floor area. Inmate Boney believed that he was intitled to an additional hour because he was a housing area delegate. Officer Cherry & Price escorted him to the visit search area and ordered him to place his hands on the wall.

Upon Officer Charry & Price's return to duty, Captain Patterson ordered them to either attest to the verbal report or submit an original report explaning the details of events so that a proper investigation could be concluded. Both officers refused to write the report stating that a verbal report was already written, then contest to it's content. Captain Patterson has filed a formal complaint against the members of service for violated the "Use Of Force" Directive.

On 6/14/06, Captain Anthony Williams #865 assigned as the Investigative Captain was assigned to ascertain the require reports as this package was forwarded to Security. Both officers again refused to submit reports on the grounds that they are suppose to get extended time to consult with their union delegate and upon three delagates decision the reports would be forwarded. they also inciated that they were unable to write the reports. As per HMD, Officer Price was full duty as of May 29, 2006 & Officer only ha restriction on lifting.

Based on this premise, I find that a decision to conclusively recommend that this "Use of Force" was necessary or even appropriate undetermined and because of the staff refusal to comply with departmental orders leads suspicion to the staff involved motives.

**3** Recommendations, if any:

This writer supports the formal charges against Officer Cherry & Price and that such Command Disciplines be upgraded to an MOC.

| Submitted By: (Print LAST NAME, FIRST NAME, RANK and SHIELD #) | Signature |
|---|---|
| for ADW Livingston Major #1019 | |

## FACILITY COMMANDER'S REPORT | PART D

INSTRUCTIONS: This review shall be based on a full review of all underlying documentation in addition to the investigation's report.

Conclusion and recommendation:

*elcom any findings are inconclusive due to staff lackif application. Therefore further investigation by of investigation Divistion be recommended* (handwritten)

| Signature of Commanding Officer | Date |
|---|---|
| ... N/W for Brian P. Riordan | 6/16/06 |

**Exhibit [15] Directive [5006] Use of Force (UOF)**

415

## THE CITY OF NEW YORK
## DEPARTMENT OF CORRECTION
## DIRECTIVE

| [X] NEW | [ ] INTERIM | [ ] REVISED | SUBJECT | | |
|---|---|---|---|---|---|
| EFFECTIVE DATE 01/25/99 | | TERMINATION DATE / / | **USE OF FORCE** **(ALL FACILITIES EXCLUDING C.I.F.M.)** | | |
| CLASSIFICATION # 5006 | SUPERSEDES | | DATED | DISTRIBUTION A | PAGE 1 OF 11 PAGES |

| RECOMMENDED FOR APPROVAL BY REVIEW BOARD MEMBER | AUTHORIZED BY THE COMMISSIONER |
|---|---|
| *William J Fraser* WILLIAM J. FRASER, ACTING CHIEF OF DEPARTMENT   SIGNATURE | *[signature]* BERNARD B. KERIK                    SIGNATURE |

I.   **PURPOSE**

This Directive is promulgated to establish Departmental policy concerning the use of force and security equipment, and to provide guidelines and procedures for staff when they are confronted with a situation requiring the use of force.

II.   **APPLICABILITY**

This Directive establishes departmental policy for all facilities, units and divisions except the Correctional Institution For Men (CIFM).

III.   **POLICY**

The Department recognizes that there are occasions when the use of force is necessary. When force is used, the actions of staff must be consistent with the law and this Directive, and involve only the amount of force necessary to restrain the inmate and control the situation. Force may not be used to punish an inmate. The use of excessive or unnecessary force is strictly prohibited.

IV.   **GUIDELINES**

Force is any physical contact deliberately made by an employee with an inmate in a confrontational situation to maintain or regain control over an intractable, disorderly, assaultive or fleeing inmate.

A-12



| | EFFECTIVE DATE | SUBJECT | |
|---|---|---|---|
| | 01/25/99 | **USE OF FORCE** | |
| | CLASSIFICATION | (ALL FACILITIES EXCLUDING C.I.F.M.) | |
| | # 5006 | | |
| | DISTRIBUTION | | |
| | A | PAGE 2 OF 11 PAGES | |

## IV. GUIDELINES (cont.)

For physical contact between an employee and an inmate to qualify as a use force, the physical contact must be made deliberately by staff, as opposed accidentally, and employed to control the inmate's conduct.

### A. PERMISSIBLE FORCE - WHEN FORCE MAY BE USED

Force may be used against an inmate to:

1. Defend oneself or another employee, inmate or visitor from a physical attack or from an imminent physical attack.

2. Prevent the commission of a crime, including inmate disturbances, escapes and aggravated harassment of a Department employee.

3. Effect an arrest when resistance is encountered.

4. Enforce Department/Facility rules and Court Orders.

5. Prevent serious damage to property.

6. Prevent an inmate from inflicting self-harm.

### B. IMPERMISSIBLE FORCE - WHEN FORCE MAY NOT BE USED

Force may not be used to punish, discipline or retaliate against an inmate. The following acts are strictly prohibited:

1. Striking an inmate for failing to obey an order.

2. Striking an inmate when grasping the inmate to guide him/her, or a push, would achieve the desired result.

3. Using force against an inmate after he/she has ceased to offer resistance.

4. Except as a last resort when there is no practical alternative available to prevent serious physical injury to staff, visitors or inmates, striking or utilizing the EIS on an inmate restrained by a mechanical device.

416



| EFFECTIVE DATE 01/25/99 | SUBJECT | |
|---|---|---|
| CLASSIFICATION # 5006 | USE OF FORCE (ALL FACILITIES EXCLUDING C.I.F.M.) | |
| DISTRIBUTION A | PAGE 3 OF 11 PAGES | |



## IV.  GUIDELINES  (cont.)

5.  Except as a last resort when there is no practical alternative available to prevent serious physical injury to staff, visitors or inmates, striking an inmate with institutional equipment.  Institutional equipment includes, but is not limited to, keys, flashlights and handcuffs.

6.  Employing a choke hold, or intentionally striking an inmate's head against the wall, floor or other object, or striking an inmate's head with a baton except pursuant to V. (C), DEADLY PHYSICAL FORCE, below.

## C.  ANTICIPATED USE OF FORCE

Whenever the use of force is anticipated and the inmate does not pose an immediate threat, a supervisor shall be notified and all actions shall be under his/her direction. In an emergency or situation where it is not possible or practical to notify a supervisor, staff may use appropriate force consistent with the procedures contained herein.

All anticipated use of force situations will be videotaped, except where safety or security concerns require an immediate response that would make waiting for the provision of a camera impractical.

## V.  PROCEDURES

### A.  ALTERNATIVES TO FORCE

Absent circumstances requiring immediate physical intervention, alternative methods to resolve a conflict should be exhausted before force is used.  For example, when an inmate refuses an order, force should never be the first response.  Instead, the following techniques should be employed:

1.  Act and speak in a deliberate manner, in an attempt to verbally persuade the inmate to comply;

2.  Keep a safe distance;

3.  Listen to the inmate and ask for his/her cooperation;



416

| EFFECTIVE DATE | SUBJECT | |
|---|---|---|
| 01/25/99 | USE OF FORCE | |
| CLASSIFICATION | (ALL FACILITIES EXCLUDING C.I.F.M.) | |
| # 5006 | | |
| A | PAGE 4 OF 11 PAGES | |

## V.  PROCEDURE  (cont.)

    4. Explain the consequences of the inmate's behavior.

    5. Request the assistance of a supervisor and additional staff.

### B.  USE OF FORCE TECHNIQUES

The Department recognizes that there are occasions when alternatives to force are either ineffective or impractical and that the use of force is necessary. When alternatives to force are not feasible, for example, when staff is attacked or faces an imminent attack, one or more of the following techniques set forth in paragraphs 1., 2. and 3. below should be used in order, if possible, with the response escalating in proportion to the threat encountered. Control techniques which are intended to minimize injuries to staff and inmates, such as the use of hand-held chemical agents or the Electronic Immobilization Shield should be employed first, where practical, before resorting to techniques that carry a higher risk of injury.

The amount of force must be only that which is necessary under the circumstances to restrain the inmate and control the situation.

1.   Where the inmate is refusing orders but non-assaultive, or destroying City property, the first level of force available is, depending on the circumstances, any of the following:

    a. Employ, if trained and authorized to do so, a chemical agent, polycarbon shield or Electronic Immobilization Shield (EIS), to temporarily disable or immobilize the inmate; or

    b. Apply a combination of control holds or a take-down technique; or

    c. Use soft-hand techniques, such as grasping or pushing the inmate to gain compliance by, and control over, the inmate.

Note:   An EIS must not be used in conjunction with, or after, chemical agents have been used in the vicinity.

416



| EFFECTIVE DATE | SUBJECT | |
| --- | --- | --- |
| 01/25/99 | | |
| CLASSIFICATION | USE OF FORCE | |
| # 5006 | (ALL FACILITIES EXCLUDING C.L.F.M.) | |
| DISTRIBUTION | | |



PAGE 3 OF

**11** PAGES

## V.  PROCEDURE (cont.)

2.  Where the inmate is attempting to assault staff or any other person, to injure himself, throwing objects/substances at staff or struggling with staff to gain control, and either the circumstances or the inmate's strength and agility are such that take-down/compliance techniques as described in 1. a., b. and c. above are or would be ineffective, the use of force techniques available are, depending on the circumstances:

a.  Apply a combination of blocks and/or strike the inmate with one (1) or more blows, to non-vital areas of the body, until the inmate discontinues the attack and is under control. Unless unavoidable, blows should be directed away from the head;

b.  Employ an authorized weapon such as a baton in an authorized manner, consistent with Department training. Every reasonable effort should be made to avoid thrusts to the head when using a baton. Using a baton as a club is prohibited except as a last resort where there is no practical alternative available to prevent serious physical injury.

3.  Only as a last resort to prevent or terminate an escape from a correctional facility or from custody while in transit outside the facility, or similarly serious breaches of security, serious physical injury or property damage which would immediately endanger the safety of staff, inmates or others, may staff utilize kicks and punches or strikes to vital parts of the body.

Note:   Multiple punches, kicks and strikes should not be employed if a single blow is sufficient to stop the inmate's attack.

EXAMPLES:

The following examples are provided to assist members in understanding the application of the continuum of force, and are not intended to represent the complete range of situations in which force may be used or the type of force appropriate under every set of circumstances.

-  Where an inmate is refusing verbal orders  to enter or exit his/her cell, the officer should employ any of the force techniques described in 1.



416

| EFFECTIVE DATE | SUBJECT | |
|---|---|---|
| 01/25/99 | **USE OF FORCE** | |
| CLASSIFICATION # 5006 | (ALL FACILITIES EXCLUDING C.I.F.M.) | |
| DISTRIBUTION A | PAGE 6 OF 11 PAGES | |

## V.   PROCEDURE  (cont.)

a., b. or c. above. The officer should not resort to any of the techniques described in 2. a., b. or 3. above UNLESS the inmate becomes assaultive or his conduct rises to that level described in 2. and 3. above.

- Where an inmate is attempting to kick or punch staff, or any other person, depending on the circumstances, the officer may first employ any of the force techniques described in 2. a. and b. above.

- Where an inmate, whose hands are restrained behind his back with a mechanical device, is charging at staff or attempting to head-butt staff, the officer should first employ any of the force techniques described in 1. a., b. or c. above (e.g., shove the inmate away or to the floor; use a handheld chemical agent).

- Where an inmate has manipulated his restrained hands to the front of his body and is brandishing an item capable of causing injury to staff, visitors or another inmate, and under the circumstances none of the techniques described in 1. a. and b. (takedown, chemical agent) are feasible, the officer should first employ any of the force techniques described in 2. a. and b. above.

- Where an unrestrained inmate is brandishing an item capable of causing serious physical injury (shank, razor), and is about to use it against another, the use of force techniques described in 3. above may be used first when all other techniques have been or would be ineffective, under the circumstances.

C.   DEADLY PHYSICAL FORCE

Deadly physical force means force which, under the circumstances in which it is used, is readily capable of causing serious physical injury, or death.

1.   Deadly Physical Force as a Last Resort

Deadly physical force may be used against an inmate only as a last resort. If there are any reasonable alternatives that can be employed short of using deadly physical force, those alternatives must be exhausted before deadly physical force is used.

416

| | EFFECTIVE DATE<br>01/25/99 | SUBJECT |
|---|---|---|
|  | CLASSIFICATION<br># 5006 | USE OF FORCE<br>(ALL FACILITIES EXCLUDING C.I.F.M.) |
| | DISTRIBUTION<br>A | PAGE 7 OF<br>11 PAGES |



## V. PROCEDURE (cont.)

2. When Deadly Physical Force May be Used

   A member of the uniformed force may use deadly physical force against an inmate:

   a. To defend him/herself or another person from what he/she reasonably believes to be the use or imminent use of Deadly Physical Force by the inmate;

   b. When there is no other reasonable alternative to prevent or terminate an escape of an inmate from a correctional facility or from custody while in transit thereto or therefrom.

## D. MEDICAL ATTENTION

Whenever force or a chemical agent is used against an inmate, the staff members involved or witnessing the incident shall, as soon as possible, have the inmate and injured staff examined by medical staff to determine the extent of any injuries and receive proper medical attention.

## E. USE OF FORCE REPORTS

Staff who employ or witness force or receive use of force allegations shall immediately report the incident to their immediate supervisor (or any supervisor if their immediate supervisor is unavailable). Staff who employ or witness force or are present at the scene shall prepare a written report concerning the incident before leaving the facility unless medically unable to do so. Necessary medical attention shall not be delayed in order to obtain an immediate report. The report shall include the following:

1. A complete account of the events leading to the use of force and whether the use of force was anticipated and a supervisor notified prior to the use of force;

2. A precise description of the incident based on the writer's own observations; the specific reasons, if known to the writer, why force was necessary; and the type of force the writer employed or observed being employed, e.g. control holds, blows, etc.;

416

| | EFFECTIVE DATE | SUBJECT | |
|---|---|---|---|
| | 01/25/99 | USE OF FORCE (ALL FACILITIES EXCLUDING C.I.F.M.) | |
| | CLASSIFICATION # 5006 | | |
| | DISTRIBUTION A | PAGE 8 OF 11 PAGES | |

V. PROCEDURE (cont.)

3. A description of any weapon the writer used or observed being used and the manner in which it was used;

4. A description of any injuries sustained by inmates or staff and the medical treatment provided, if known to the writer;

5. A list of all participants, witnesses and persons the writer observed present at the incident and their actions. A participant shall complete Part A of the Use of Force Report. A witness shall complete Part A-1 of the Use of Force Report - **WITNESS REPORT.**

INCIDENT INVESTIGATION

F. Upon receiving notice of a use of force, the supervisor responding shall insure that any injured staff or inmates receive medical treatment and shall notify the Tour Commander and report all the facts concerning the incident which are known at that time. The Tour Commander shall report all uses of forces to the Central Operations Desk within sixty (60) minutes. The Central Operations Desk shall notify the Investigations Division within sixty (60) minutes.

G. The Tour Commander shall assign a supervisor to investigate the incident after evaluating the seriousness of the incident and the extent of any injuries sustained by inmates or staff.

1. A non-exceptional incident may be investigated by a housing area Captain. If the assigned housing area Captain was involved in the incident or witnessed the incident another Captain should be assigned to conduct the investigation. The Captain shall complete Part B of the Use of Force Report - **INVESTIGATING SUPERVISOR'S REPORT.** The report shall contain a statement as to whether the incident was videotaped, if the incident was anticipated.

2. Exceptional incidents should be investigated by a Security/Administrative Captain. The Captain shall complete Part B of the Use of Force Report - **INVESTIGATING SUPERVISOR'S REPORT.** The report shall contain a statement as to whether the incident was videotaped, if the incident was anticipated.

416



| EFFECTIVE DATE 01/25/99 | SUBJECT | | |
|---|---|---|---|
| CLASSIFICATION # 5006 | USE OF FORCE (ALL FACILITIES EXCLUDING C.I.F.M.) | | |
| DISTRIBUTION | | PAGE 3 OF | 11 PAGES |

## V.   PROCEDURE (cont.)

a. If the incident takes place on a tour when there is no Security/ Administrative Captain on duty, the Tour Commander shall ensure that participants and witnesses complete Parts A and A-1 of the Use of Force Report before leaving the facility, unless doing so would impact the operation of the facility or the safety of staff, and that any physical evidence is preserved. The Security/Administrative Captain assigned to investigate the incident shall review all reports and begin the process of interviewing inmate and staff witnesses and participants on his/her next scheduled tour.

H.** INCIDENT VIDEOTAPE – Immediately after a use of force/anticipated use of force incident is videotaped, the Tour Commander shall take possession of the videotape, mark it with the date, time, UOF number (if any) and then deliver it immediately to the Security Office. All such tapes must be reviewed as soon as practicable by the Tour Commander or supervisor designated by the Commanding Officer. During non-business hours, the videotape will be secured in the evidence safe. Videotapes of use of force incidents shall be filed for no less than four (4) years in the Office of the Deputy Warden of Security in chronological order. Tapes of incidents in which no force was used may be recycled after sixty (60) days form the date of taping.

I.* The Tour Commander/Deputy Warden shall review all use of force incidents and submit their report to the Commanding Officer on Part C of the Use of Force Report – **TOUR  COMMANDER'S REPORT.**

J.* The Commanding Officer shall review all use of force incidents and record his/her conclusions and recommendations on Part D of the Use of Force Report – FACILITY COMMANDER'S REPORT. Reports should be completed, reviewed and forwarded to the Chief of Security's Office and the investigation Division within ten (10) business days after the incident. Any charges should be initiated within thirty (30) days.

## VI.   MECHANICAL RESTRAINTS

A. Mechanical restraints may only be used:

1. To transfer an inmate from one location to another;

Does not apply to the Central Punitive Segregation

416



| | EFFECTIVE DATE 01/25/99 | SUBJECT | |
|---|---|---|---|
| | CLASSIFICATION # 5006 | **USE OF FORCE** (ALL FACILITIES EXCLUDING C.I.F.M.) | |
| | DISTRIBUTION | | |



## VI.   MECHANICAL RESTRAINTS  (cont.)

2.   To prevent an inmate from inflicting self-harm based upon the advice of medical staff;

3.   To restrict the inmate's movement when the past history or present behavior of the inmate creates the likelihood that the inmate will injure himself/herself, cause bodily injury to another person, cause property damage or attempt to escape.  The use of restraints in these circumstances shall, if possible, be used with prior approval or with approval obtained immediately following the application of restraints.

4.   To secure an inmate in an unsecured area.

B.   Mechanical restraints may not be used:

1.   To punish an inmate by using restraints for an excessive period of time or in an unauthorized manner such as hogtying;

2.   About the head or neck of an inmate;

3.   To restrict the blood circulation or breathing of an inmate;

## VII.   CHANGE IN EXISTING DEPARTMENT PROCEDURES

Directive #5005R, USE OF FORCE (CIFM ONLY), is in full force and effect only in the Correctional Institution For Men(CIFM).

## VIII.   REFERENCE

A.   Operations Order #10/85, PROTECTIVE PHYSICAL RESTRAINT OF INMATES BEING OBSERVED OR TREATED FOR MENTAL/EMOTIONAL DISORDERS, dated 03/01/85.

B.   Operations Order #14/97, SECURITY RESTRAINTS FOR VIOLENT INMATES, dated 10/22/97.

C.   Directive #4202, PLACEMENT OF MECHANICAL SECURITY RESTRAINTS ON OUTPOSTED INMATE PATIENTS, dated 08/20/90

416



| | EFFECTIVE DATE 01/25/99 | SUBJECT | USE OF FORCE (ALL FACILITIES EXCLUDING C.I.F.M.) | |
| --- | --- | --- | --- | --- |
| | CLASSIFICATION # 5006 | | | |
| | DISTRIBUTION A | | PAGE 11 OF 11 PAGES | |

## VIII. REFERENCE (cont.)

D. Directive #4510RR, CHEMICAL AGENTS, dated 05/10/95 (as amende

E. Directive 4600, ELECTRONIC IMMOBILIZATION SHIELD, dated 7/9/98.

F. Directive #5005R, USE OF FORCE (CIFM ONLY).

G. Operations Order #9/98, FACILITY REVIEW OF USES OF FORCE IN C.P.S.U., dated 7/20/98.

H. C.P.S.U. Command Level Order 61/96, as revised, HANDHELD VIDEO CAMERAS, dated 11/6/98.

## XI. SPECIAL INSTRUCTIONS

Commanding Officers of all facilities and prison wards (except CIFM) sh promulgate command level orders based on the policy, guidelines and procedu contained herein.

## X. ATTACHMENT

Form #5004 - USE OF FORCE REPORT, PARTS A-D.

Note:    The corresponding forms exclusively for use in the C.P.S.U. are n attached.

**Exhibit [16] Termination Papers dated March 22nd 2007**



NEW YORK CITY DEPARTMENT OF CORRECTION
Martin F. Horn, Commissioner

Office of the Commissioner

60 Hudson Street
New York, NY 10013
212 • 266 • 1212
Fax 212 • 266 • 1219

March 22, 2007

C.O. Bernard Cherry
765 E.163rd. Street Apt.#14C
Bronx, New York 10456

RE: DISMISSAL:
DR# S 278/06, 282/06
634/04

Dear C.O. Cherry,

After a complete review of the record and the report and recommendation of the Honorable Kevin Casey,  Administrative Law Judge, duly designated to conduct a disciplinary hearing on the charges  and specifications  listed above,  I find you guilty as reflected in the report and recommendation. A copy of the report and recommendation is enclosed.

The sanc-tion imposed upon is:

**DISMISSAL FROM THE DEPARTMENT OF CORRECTION EFFECTIVE FORTHWITH.**

Under the provision of Section 76 of the Civil Service Law, you are entitled to appeal from this determination by application either to the Civil Service Commission or to a court in accordance with the provisions of Article 78 of the Civil Practice Law and Rules.  If you elect to appeal to the Commission such appeal must be filed in writing within twenty (20) days of receipt of this determination.  A decision of the Commission is final and conclusive.

Sincerely,

Martin F. Horn, Commissioner

C: Office of Administrative Trials and Hearings

Served: _____     Date: _____

**THE CITY OF NEW YORK**
**DEPARTMENT OF CORRECTION**

**Findings and Recommendations of**
**Charges and Specifications**

**AGAINST**

| | |
|---|---|
| File No. | OATH Index No. 184/2007 |
| Case No. | DR #s: 634/2004; 278/2006; and 282/2006 |
| Book No. | Page |

| | | | | |
|---|---|---|---|---|
| Correction Officer<br>Rank or Title | Bernard CHERRY<br>Name | 15484<br>Shield/ID | AMKC<br>Facility/Unit | 2/27/1997<br>Date Appointed |

-By-

| | | |
|---|---|---|
| Agency Attorney<br>Rank or Title | Eric K. Yuen<br>Name | Office of Trials and Litigation<br>Facility/Unit |

| | | |
|---|---|---|
| 12/5/2006; 8/8/2006<br>Date of Charges | 1/4/2007<br>Trial Commenced | 1/12/2007<br>Trial Concluded |

ADJOURNMENTS:

EXAMINED BY:    Hon. Kevin Casey

---

| CHARGES | FINDINGS AND RECOMMENDATION |
|---|---|
| | DATE:    2/16/2007 |

**CHARGES**

Directives:  Dir 2258
Dir 2282

Rules:  3.05.010 *
3.05.050 *
3.05.120 *
3.20.030 *
3.20.070 *
3.20.190 *
3.20.300 *
4.30.020 *

Other:

**FINDINGS AND RECOMMENDATION**

**ON CHARGES**
Dir. 2258- Guilty
Dir. 2282- Guilty
3.05.010-Guilty
3.05.050-Guilty
3.05.120-Guilty
3.20.030-Guilty
3.20.070-Guilty
3.20.190-Guilty
3.20.300-Guilty
4.30.020-Guilty *

| SPECIFICATIONS | ON SPECIFICATIONS |
|---|---|
| **DR#634/2004** | |
| 1.  Respondent was excessively out of his residence on twelve occasions between July-September 2004 | Guilty |
| 2.  Respondent failed to submit documentation within seven days to account for his whereabouts when he logged out of his residence on twelve occasions. | Guilty |
| 3.  Respondent further failed on three separate occasions to promptly submit a report regarding his absences as ordered by three | Guilty |
| 4.  Respondent submitted false and/or misleading reports regarding his whereabouts with respect to three of the above-mentioned days. | Not Guilty |
| **DR#278/2006** | |
| 1.  From January 1, 2005 through December 31, 2005, Respondent Cherry reported sick on one hundred forty-nine (149) days. | Guilty |
| 2.  From January 1, 2006-December 26, 2006, Respondent Cherry reported sick on 100 days. | Not Guilty |
| **DR#282/2006** | |
| On or about June 14, 2006, Respondent Cherry failed to obey a lawful order from a supervisor to submit a written report involving inmate Boney Murphy. | Guilty |

**DISPOSITION**

TERMINATION

3/22/07

DEPUTY COMMISSIONER

---

ACTION OF THE COMMISSIONER

DATE

COMMISSIONER OF CORRECTION